IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDE NKPADO<br>2433 Otis Street NW<br>Washington, D.C. 20018,<br><br>and<br><br>EUCHARIA NKPADO<br>2433 Otis Street NW<br>Washington, D.C. 20018,<br><br>    Plaintiffs,<br><br>v.<br><br>THE STANDARD FIRE INSURANCE<br>COMPANY (TRAVELERS),<br>One Tower Square<br>Hartford, Connecticut 06183,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____ |

## NOTICE OF REMOVAL

Defendant The Standard Fire Insurance Company ("Standard Fire"), by its

undersigned counsel, pursuant to 28 U.S.C. § 1446, hereby removes this action from the

Superior Court for the District of Columbia to the United States District Court for the

District of Columbia.  The grounds for removal are:

1.    Plaintiffs Jude and Eucharia Nkpado brought this action in the Superior

Court for the District of Columbia against Standard Fire.  That action is captioned *Jude*

*and Eucharia Nkpado v. The Standard Fire Insurance Company (Travelers) et al.* , Civil

Action No. 0004627-08, and is referred to hereinafter as the "Superior Court Action."

True and correct copies of the Summons, and Complaint in the Superior Court Action are

attached hereto as Exhibits A-1 and A-2. Standard Fire's answer to the complaint, which

it filed to avoid a default judgment under the Superior Court Rules requiring a response

within twenty days of service, is attached hereto as Exhibit A-3, and the disclosure of

corporate interest filed in the Superior Court is attached hereto as Exhibit A-4. No other

process, pleadings, orders, or papers have been served on Standard Fire in the Superior

Court Action.

      2.     Plaintiffs served Standard Fire's registered agent with process on July 1,

2008. Thus, in accordance with 28 U.S.C. § 1446(b), this Notice of Removal is being

filed within 30 days after receipt by service of the Complaint, which was the initial

pleading setting forth the claims for relief upon which this action is based.

      3.     Plaintiffs are citizens of the District of Columbia.

      4.     Standard Fire is a Connecticut corporation with its principal place of

business in Hartford, Connecticut. It is therefore a citizen of Connecticut.

      5.     The Complaint expressly seeks relief solely against Standard Fire, which is

the only proper defendant to this action. *See* Ex. A-2, at 1 (plaintiffs "are seeking a relief

against the Standard Fire Insurance Company"). Plaintiffs further "are suing Mr. James

M. Michener (Secretary), Joseph Lacher (Chief Executive Officer, Personal Lines) [and]

Angela Curtis (Property Claims Adjustor) in their official capacity representing the

08416/0/00421982.WPDv3           2

defendant for the specific performance of an insurance contract, monetary damages and for breach of fiduciary duty." *Id.* Plaintiffs have not served these three individuals, nor have they attempted to serve these individuals, with process.

6. Ms. Curtis a citizen of the District of Columbia, and Messrs. Michener and Lacher are citizens of Connecticut. Ms. Curtis' District of Columbia citizenship, however, does not affect the Court's jurisdiction. Removal is permitted "when the plaintiff has not or cannot state a claim for relief against [an] individual or entity under the applicable substantive law or does not intend to secure a judgment against that particular defendant." Wright, Miller & Cooper, 14B Fed. Prac. & Proc. Juris. 3d § 3723 & n.84.1. As set forth in the previous paragraph, the Complaint does not seek any judgment against these three individuals and expressly sues them only "in their official capacity representing the defendant," Standard Fire. *See* Ex. A-2, at 1. Undersigned counsel has contacted counsel for Plaintiffs and confirmed that Plaintiffs have no intent to seek relief against these three individuals, having named them solely because of an alleged need to name natural persons to obtain jurisdiction over Standard Fire. Further, Plaintiffs have not stated and cannot state a claim for relief against the three individuals under applicable substantive law. *See Paul v. Judicial Watch, Inc.*, 543 F. Supp.2d 1, 5 (D.D.C. 2008) ("It is a general principle of corporation law that the officers and employees of a corporate entity are its agents. Under the law of the District of Columbia, an agent is not personally liable on a contract it executes on behalf of a principal so long

as it identifies the principal and discloses the agency relationship. Further, where a principal is disclosed, no liability will fall upon the agent for acts committed by the principal unless he binds himself for same by definite words or stipulation.") (citations omitted). Because these three individuals are not proper defendants to this action, or are merely nominal defendants, their consent to this removal is not necessary.

7.     Because Plaintiffs are citizens of the District of Columbia, and because Standard Fire is a citizen of Connecticut, diversity of citizenship exists.

8.     The Complaint seeks contractual damages of $111,512.00, inconvenience damages of $50,000.00, and punitive damages of $334,536.00. Although the demand for punitive damages is not legally cognizable, *see Fireman's Fund Ins. Co. v. CTIA*, 480 F. Supp. 2d 7 (D.D.C. 2007), Plaintiffs' claim for contractual damages of $111,512.00 is sufficient to sustain diversity jurisdiction.

9.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1) because this action is between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00.

10.     Removal of this lawsuit is authorized by 28 U.S.C. § 1441(a).

11.     Attached hereto as Exhibit B is a copy of the notice to the clerk of the Superior Court for the District of Columbia of the filing of this notice of removal, the original of which is being filed with the Clerk of the Superior Court for the District of Columbia, as required by 28 U.S.C. §1446(d).

4

12.    Attached hereto as Exhibit C is a copy of the Notice to the Adverse Party of the Filing of the Notice of Removal, the original of which is being served on Plaintiff's counsel, pursuant to 28 U.S.C. § 1446(a).

Respectfully submitted,

Steven M. Klepper, Bar No. MD 26664
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
410.752.6030 (voice)
410.539.1269 (facsimile)
sklepper@kg-law.com

*Attorneys for Defendant*

Dated: July 31, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July, 2008, a copy of this Notice of Removal was sent by first-class mail, postage prepaid, to:

Steffanie J. Lewis
The International Business Law Firm P.C.
1915 Eye Street NW Suite 500
Washington, D.C. 20006-2118

*Counsel for Plaintiffs*

Steven M. Klepper

 

**CA Form 1**

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

| |
|---|
| Eucharia and Jude NKPADO<br>2433 Otis St., NW Washington, DC 20018 |

*Plaintiff*

0004627-08

**VS.**

| |
|---|
| The Standard Fire Insurance Company (Travelers)<br>P. O. Box 10891 Chantilly, VA 20153 |

Civil Action No. [                    ]

*Defendant*

Corporation Service Company, Registered Agent of Travelers
1090 Vermont Ave., NW Suite 430
Washington, DC 20005    **SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| |
|---|
| Steffanie J. Lewis (DC 373078) |

Name of Plaintiff's Attorney

| |
|---|
| 1915 Eye Street, NW |

Address

| |
|---|
| Washington, DC 20006 |

| |
|---|
| (202) 296-1111 |

Telephone

By _____
**Deputy Clerk**

Date | 06/26/2008

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 91

**NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.



IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

1 Eucharia and Jude NKPABO

*Plaintiff*

Vs.

The Standard Fire Insurance Company ('Travelers)
P.O. BOX 10891 Chantilly, VA 20153

*Defendants*

CIVIL ACTION No. [                    ]

0004627-08

CRL
Civil Clerk Office
JUN 2 6 2008
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT

1. Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.

Wherefore, Plaintiff demands judgment against Defendant in the sum of $ 496,048.00 with interest and costs.

Phone: 202-296-1111

DISTRICT OF COLUMBIA, SS

[                    ] being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all set-offs and just grounds of defense.

_____
(Plaintiff                                    Agent)

Subscribed and sworn to before me this  26th  day of  June  2008

FORM CV-1013/ Nov. 00

BHUPINDERPAL S CHHABRA
NOTARY PUBLIC
WASHINGTON, DC
COMMISSION EXPIRES 11.14.09

_____
(Notary Public/Deputy Clerk)



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### 500 Indiana Avenue, NW Washington DC 20001
### Civil Branch

Jude and Eucharia NKPADO,
   2433 Otis Street NW
   Washington DC 20018
         Plaintiffs,              *

vs                                 **Civil Action No:**
                             *

The Standard Fire Insurance Company (Travelers),
Mailing Address:  PO Box 10891        *
               Chantilly, VA 20153        *0004627-08*
                                 *

Registered Agent: Corporation Service Company  *
                      1090 Vermont Ave., NW
                      Suite 430
                      Washington, DC 20005

James M. Michener (Secretary)
Joseph Lacher      (Chief Executive Officer,
                 Personal Lines)
Angela Curtis     (Property Claims Adjustor)

## COMPLAINT FOR SPECIFIC PERFORMANCE OF INSURANCE CONTRACT, MONETARY DAMAGES, AND BREACH OF FIDUCIARY DUTY

The plaintiffs, Mr. Jude NKPADO and his wife, Echaria NKPADO, are seeking a relief

against the Standard Fire Insurance Company (Travelers) and are suing Mr. James M.

Michener (Secretary), Joseph Lacher (Chief Executive Officer, Personal Lines) Angela

Curtis (Property Claims Adjustor) in their official capacity representing the defendant for

the specific performance of an insurance contract, monetary damages and for breach of

fiduciary duty.

The plaintiffs hereby state to the court as follows:

Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition as amended, Section 11-921 for this action is based on the authority granted to the court by the laws of the District of Columbia, the location of the property that was damaged, specifically residential property located at 2433 Otis St., NE, Washington DC.

1.  Plaintiffs are husband and wife, residents of the District of Columbia, and Defendant Travelers has business offices located in the District of Columbia at 1660 L St. NW; 7321 Georgia Ave, NW; 5157 MacArthur Blvd NW, 3201; New Mexico Ave, NW; 910 17th St, NW and 5260 Western Avenue, NW.

2.  On February 5, 2007, Plaintiffs renewed their Homeowners policy with Travelers, which policy was initially purchased on March 25, 1998 when Plaintiffs purchased their home located at 2433 Otis St., NE, Washington DC.

3.  Said contract was executed by James M. Michener, Secretary and Joseph Lacher, Chief Executive Officer Personal Lines, and Plaintiffs have continuously paid their homeowner insurance premiums and renewals, including the increase in coverage charged by Travelers "to reflect the cost to rebuild your home." Renewal 02/05/2007, page 2 of 2. (Exhibit 1, Page 2)

4.  The terms of this contract are clear and provide for coverage of the dwelling on the residence premises used principally as a private residence as well as walls that support the

roof of the dwelling. (Exhibit 2, Page 2) Additional coverages includes a caving in of any

part of a building with the result that the building or part of the building cannot be

occupied for its current intended purpose. It includes coverage for direct physical loss

involving collapse of any part of a building if the collapse was caused by perils . These

perils apply to covered buildings and personal property and to decay that is hidden from

view, unless the presence of such decay is known to an insured prior to collapse. The

policy owner may use up to 10% of the limit of liability to meet applicable ordinance, law

or regulations in making repairs. Policy "Special Provisions - District of Columbia" page

1 of 4. (Exhibit 3, Page 2) Travelers will provide an additional amount of insurance, up

to 50% of the Coverage A limit of liability and all other provisions of this policy apply.

Policy "Additional Replacement Cost Protection" page 1 or 1. (Exhibit 4) Loss of use is

increased 30% of the limit show. Policy "Dwelling. Value Added Package - Plus", page

1 of 6. (Exhibit 5, Page 1)

5.  On 04/16/2007 a huge tree fell on the Nkpado covered residence. (Exhibit 6) The

impact shook the whole house, destroyed a large section of the roof, pushed in the

basement wall, cracked the supporting walls in many places, caused damage to interior

fixtures, destroyed front yard landscaping and walkway, and has caused water damage

from the unrepaired damaged areas. (Exhibits 7) Mrs. Nkpado was recovering from

major surgery and had to stay in at a neighbors until it was marginally possible to live in

their home. (Exhibit 8)



6.  Travelers made an initial estimate and sent Plaintiffs a check in the amount of $3,130 which was used as follows to immediately pay for necessary services to enable marginal occupancy. (Exhibits 9,10,11)

|   |   |   |
|---|---|---|
| a. | DMW Electric, Inc. - restoration of electricity | $2,800 |
| b. | Precious Cleaning Service - clear debris from huge tree fall | 922 |
| c. | A 7 F Construction - cover damaged roof with plastic | 1,275 |
|   | Total | $4,997 |
|   | Deficient funds ($4,997 - $3,130) | $1,867 |

Plaintiffs realized that there was a mistake and engaged FMC Structural Design to do a structural survey, provide an assessment of the falling tree damage and to make a recommendation. On May 10, 2007, FMC Structural Design sent its report to Plaintiffs who sent it, in turn, to Travelers. (Exhibit 12). On May 25, 2007, Travelers made a second estimate with a total damage of $9,229.08 but only paid Plaintiffs an additional $3,909.67, which was spent on the following immediate repairs. (Exhibit 13)

|   |   |   |
|---|---|---|
| d. | Payment to cover deficit fund stated at "c" above | $1,867 |
| e. | Hearn Insulation and Improvement - 2nd installation of tarp as original plastic temporary roof covering began leaking. | 520. |
| f. | Home Depot - (six) 2"x8"x1" boards installed by owner to hold up wet ceiling | 14 |
| g. | Retain but insufficient to make repairs | 1.508.67 |
|   | Total | $3.909.67 |

7.   Prior to August 5, 2007, Plaintiffs realized that they would not be able to repair their home and engaged The International Business Law Firm (IBLF) to try to reach a reasonable settlement with Travelers. IBLF submitted two proposals to Travelers: 1) the proposal by Mr. Steve Roper, Roper, President, Building & Design, LLC. In the amount of $94,870, to make the repair recommended by FMC Structural Design, Inc.; and 2) the proposal from Hearn Insulation & Improvement Company, Inc. for $16,642 which included materials and labor to repair the roof.

8.   On August 14, 2007, Angela Curtis, Travelers Property Claims, provided to undersigned attorney a structural inspection report done by EFI Global. The report discussed matters that were not relevant and were not in the report Nkpado had submitted to Travelers. The EFI Basement analysis reported delaminated paint on the surface of the ceiling in the basement stairway. However, there is no ceiling in the basement . Contrary to the EFI report, the basement joists are not painted. It discussed conditions on the left wall, a wall that was not mentioned in the Nkpado report. Repairs identified in the report of the right and rear wall were old. These repairs existed when the house was purchased. They were not changed by the impact of the tree and were not included in the estimate for repairs. Contrary to the report of the "Second Floor", a crack had developed from the tree's impact, water was dripping from the crack and there was a resulting stain on the ceiling. After receiving the EFI report, Nkpados hired a structural engineer to reexamine the house, particularly the locations identified in the EFI report.

9. In its August 14, 2007 correspondence, Travelers wanted to conduct another inspection of the roof with Nkpado's roofer to determine the cost of repair. Per phone request, Travelers proposed that Mr. Nkpado's roofer meet with Travelers roofer and arrive at the appropriate estimate. Mr. Nkpado and his roofer met at the appointed time at the covered residence on or about November 1, 2007. Travelers brought no roofer, but an adjuster who stayed on the ground and, except for asking dimensions of the hole, did not converse with Nkpado's roofer who was on the roof.

10. Thereafter on November 9, 2007, Travelers increased the coverage by $591.23 and sent Plaintiffs a check in said amount. Plaintiffs returned the check as totally inadequate to repair the damage along with a letter reminding Travelers that its policy prevents repairs if the compensation is unsatisfactory. As a result, the impact on the house is becoming more evident, more leaks are developing and more damage from existing leaks.

11. Following the "inspection" described above, on November 7 and 27, 2007, Nkpado's roofer, Hearn Insulation & Improvement Company, Inc. faxed reports to Mr. Nkpado and undersigned attorney. When Traveler's provided no response, on January 17, 2008, undersigned faxed the reports to Angela Curtis, Property Claims, Travelers with an urgent request to provide funds to complete the bid to repair the roof with the reminder that there was a hole in the roof and structural damage resulting in large leaks into the Nkpado living quarters

12. There has been no response to date. On April 20 and 21, 2008, the Washington, DC, area experienced steady spring rain and the area has had several severe storms since. It has been particularly difficult to live in the leaking Nkpado home.

WHEREFORE, respondent moves this court for an order providing:

1. Specific performance of the Homeowner insurance policy purchased by Plaintiffs from Defendant Travelers on the policy's terms, or as may be equitably adjusted;

2. Damages in an amount to fund the bids for roof and structural damages caused by the fallen tree, estimated to be $111,512, is just 17% of the $635,000 assessed value of the house per District of Columbia assessment for tax purposes and Nkpados have paid Travelers each year to insure their home since they originally purchased the house.

3. Damages for the hardship and inconvenience of living in a home with a hole in the roof and insecurity of living with structural damage in the amount of $50,000.

4. Punitive damages for Travelers failure to operate as an insurer in use good faith in the amount of $334,536.

## VERIFICATION OF COMPLAINT

I solemnly swear or affirm under criminal penalties for making a false statement that I have read the foregoing Complaint, and that the factual statements made therein are true to the best of my personal knowledge, information, and belief.

DATED:

Mr. Jude NKPADO, Plaintiff

Mrs. Eucharia NKPADO, Plaintiff

by _____    ᐃC Bar #
                                373078

Steffanie J. Lewis, Attorney for Plaintiffs
The International Business Law Firm P.C.
1915 Eye Street NW Suite 500
Washington, DC 20006-2118
(202) 296-1111, fax (202) 296-1175
E-mail: slewis@iblf.com

Page 8

INSURANCE COUNSELORS INC
1 GEICO BLVD
FREDERICKSBURG, VA 22412
00338

 **TRAVELERS**

February 05, 2007

EUCHARIA NKPADO & JUDE NKPADO
2433 OTIS ST NE
WASHINGTON DC 20018

Dear Policyholder,

Thank you for allowing us to continue servicing your Homeowners policy. We value you
as a customer and appreciate your loyalty.

Enclosed, you will find your renewal Policy Declarations and related documents.
After you have reviewed this entire package, please store it in a safe place with your original policy.

If you have any questions concerning your policy, please contact us at the telephone number displayed on the
attached Declarations. We want to be sure that you completely understand your policy and the protection we
provide.

We appreciate your business and look forward to servicing your insurance needs.

Insurance Counselors Inc.

PL-10750  12-02

Continuation
Declarations

 **TRAVELERS**

## HOMEOWNERS POLICY

**Named Insured**

EUCHARIA NKPADO & JUDE NKPADO
2433 OTIS ST NE
WASHINGTON DC 20018

**Your Agency's Name and Address**

INSURANCE COUNSELORS INC
1 GEICO BLVD
FREDERICKSBURG, VA    22412

| | |
|---|---|
| **Your Policy Number:**  944385690 633 1 | **For Policy Service Call:** (800) 841-3005 |
| **Your Account Number:**  944385690 | **For Claim Service Call:** 1-800-CLAIM33 |

**Policy Period**
FROM: 03-25-07 To: 03-25-08  12:01 A.M.
STANDARD TIME AT THE RESIDENCE PREMISES

**Location of Residence Premises**
2433 OTIS ST NE
WASHINGTON DC 20018

| Section I - Property Coverages | Limits of Liability | Premium |
|---|---|---|
| A - DWELLING | $   357,000 | $   1,191.00 |
| B - OTHER STRUCTURES | 35,700 | INCL |
| C - PERSONAL PROPERTY | 249,900 | INCL |
| D - LOSS OF USE | 107,100 | INCL |

| Section II - Liability Coverages | | |
|---|---|---|
| E - PERSONAL LIABILITY (BODILY INJURY AND PROPERTY DAMAGE) EACH OCCURRENCE | $   100,000 | INCL |
| F - MEDICAL PAYMENTS TO OTHERS- EACH PERSON | 1,000 | INCL |

**Policy Forms and Endorsements**

| | | | | |
|---|---|---|---|---|
| HO-3 | (06-91) | Homeowners 3 Special Form | | |
| HA-300 DC | (11-02) | Special Provisions | | |
| HO-827 | (07-02) | Limited Fungi, Other Microbes or Rot Remediation | $5,000 | |
| 58065 | (09-02) | Value Added Package - Plus | | $   324.00 |
| 58273 | (12-99) | Additional Replacement Cost Protection Increased Amount - Maximum Additional Amount of Insurance 50% | | 14.00 |

| **Total Premium** | | $   1,529.00 |
|---|---|---|

**Your Premium Reflects the Following Credits or State Surcharges**

| | |
|---|---|
| Security Credit | -74.00 |
| Loss Free Credit | -64.00 |

**Policy Deductible:** $ 500.00 All perils insured against

In case of loss under section I, only that part of the loss over the stated deductible is covered.

**First Mortgagee**

INSTANT CAPITAL FUNDING GROUP,
INC. ISAOA
1045 W. KATELLA AVE, SUITE 390
ORANGE            CA 92867
LOAN NUMBER: 11461

**Your Insurer:**   The Standard Fire Insurance Company
One of The Travelers Property Casualty Companies
One Tower Square, Hartford, CT 06183

**For Your Information**

Coverage for your home has been increased by 6.8% to more adequately reflect the cost to rebuild your home. This adjustment was based on information provided by Marshall & Swift/Boeckh, an independent firm specializing in construction and consumer costs. If you need to adjust your limits further, or for any other policy changes, please contact your insurance representative.

This is not a bill.  The mortgagee will be billed separately for this policy.

For information about how St. Paul Travelers compensates independent agents and brokers, please visit www.Travelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

**YOUR INSURER MAY CONSIDER YOUR CLAIMS AND LOSS HISTORY WHEN DETERMINING WHETHER TO RENEW YOUR POLICY.**

Thank you for insuring with Travelers. We appreciate your business. If you have any questions about your insurance, please contact your agent or representative.

These declarations with policy provisions HO-3 (06-91) and any attached endorsements form your Homeowners Insurance Policy.  Please keep them with your policy for future reference.

COVHO3



# Homeowners Policy Booklet

# from Travelers

# YOUR HOMEOWNERS POLICY QUICK REFERENCE

**DECLARATIONS PAGE**
**Your Name**
**Location of Your Residence**
**Policy Period**
**Coverages**
**Amounts of Insurance**
**Deductible Amounts**

|  |  | Beginning On Page |
|---|---|---|
|  | AGREEMENT | 1 |
|  | DEFINITIONS | 1 |
| **SECTION I PROPERTY COVERAGES** | COVERAGES | 2 |
|  | Coverage A - Dwelling | 2 |
|  | Coverage B - Other Structures | 2 |
|  | Coverage C - Personal Property | 2 |
|  | Coverage D - Loss of Use | 4 |
|  | Additional Coverages | 4 |
|  | PERILS INSURED AGAINST | 7 |
|  | EXCLUSIONS | 10 |
|  | CONDITIONS | 11 |
|  | Your Duties After Loss | 11 |
|  | Loss Settlement | 12 |
| **SECTION II LIABILITY COVERAGES** | COVERAGES | 14 |
|  | Coverage E - Personal Liability | 14 |
|  | Coverage F - Medical Payments to Others | 14 |
|  | EXCLUSIONS | 15 |
|  | ADDITIONAL COVERAGES | 17 |
|  | CONDITIONS | 18 |
|  | Limit of Liability | 18 |
|  | Duties After Loss | 18 |
| **SECTION I and SECTION II CONDITIONS** | CONDITIONS | 19 |
|  | Policy Period | 19 |
|  | Cancellation | 19 |
|  | Nonrenewal | 20 |

HO-3 (06-91)

HO-3 (06-91)

## Homeowners 3 Special Form

### AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

### DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse, if a resident of the same household, and "we", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"aircraft"** means any contrivance, whether or not tethered, used or designed for air or space flight capable of carrying cargo or people. The contrivance may be either lighter or heavier than the air, engine powered or designed or used to float, glide, soar or control descent.

2. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. **"business"** includes trade, profession or occupation

4. **"insured"** means you and the following residents of your household:

   a. your relatives;

   b. any other person under the age of 21 who is in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **4.a.** or **4.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any **business**, or without permission of the owner is not an **insured**;

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in **4.a.** or **4.b.** above; or

      (2) other persons using the vehicle on an **insured location** with your consent.

5. **"insured location"** means:

   a. the residence premises;

   b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with the premises included in **5.a.** or **5.b.**;

   d. any part of a premises not owned by any **insured** but where any **insured** is temporarily residing;

   e. vacant land owned by or rented to any **insured** other than farm land;

   f. land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for any **insured**;

   g. individual or family cemetery plots or burial vaults of any **insured**;

   h. any part of a premises occasionally rented to any **insured** for other than **business purposes**.

   i. any part of a premises, which is not a residence, owned or rented by any **insured** used for other than business purposes to:

      (1) moor or store watercraft;

      (2) garage or store motorized land vehicles; or

      (3) park or store **aircraft**.

6. **"occurrence"** means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in:

   a. **bodily injury**; or

   b. **property damage**.

7. **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.

8. **"residence employee"** means an employee of any **insured** who performs duties in connection with the maintenance or use of the **residence premises**, including household or domestic services, or who performs duties elsewhere of a

similar nature not in connection with the **business of any insured**.

9. **"residence premises"** means the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the **"residence premises"** in the Declarations.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

**We cover:**

a. the dwelling on the **residence premises** shown in the Declarations used principally as a private residence, including structures attached to the dwelling on the same or contiguous foundation; and

b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**.

THIS COVERAGE DOES NOT APPLY TO:

a. FENCES;

b. EXTERIOR WALLS THAT DO NOT SUPPORT THE ROOF OF THE DWELLING;

c. LAND, INCLUDING LAND ON WHICH THE DWELLING IS LOCATED.

### COVERAGE B - OTHER STRUCTURES

**We cover:**

Other structures on the **residence premises**, separated from the dwelling by clear space. Structures with a separation from the dwelling and its foundation and linked by only a conduit, deck, fence, patio, utility line, walk, wall, or similar connector means that structure is an other structure. Other structures include but are not limited to:

a. Barns;

b. Exterior walls that do not support the roof of the dwelling;

c. Fences;

d. Garages that are detached from the dwelling;

e. Gazebos;

f. Sheds; or

g. Swimming pools that are exterior to the walls supporting the roof of the dwelling.

THIS COVERAGE DOES NOT APPLY TO LAND, INCLUDING LAND ON WHICH THE OTHER STRUCTURES ARE LOCATED.

WE DO NOT COVER OTHER STRUCTURES:

a. USED IN WHOLE OR IN PART FOR **BUSINESS** PURPOSES: OR

b. RENTED OR HELD FOR RENTAL TO ANY PERSON NOT A TENANT OF THE DWELLING, UNLESS USED SOLELY AS A PRIVATE GARAGE. Use of Coverage B does not reduce the amount of coverage available to you under Coverage A - Dwelling.

### COVERAGE C - PERSONAL PROPERTY

We cover personal property owned or used by any **insured** while it is anywhere in the world. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied by any **insured**. In addition, we will cover at your request, personal property owned by a guest or a **residence employee**, while the property is in any residence occupied by any **insured**.

Our limit of liability for personal property usually located at any **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. THIS LIMIT APPLIES TO THE PERSONAL PROPERTY OF INSUREDS, INCLUDING, BUT NOT LIMITED TO, STUDENTS WHO RESIDE AWAY FROM THE **RESIDENCE PREMISES** PERIODICALLY FOR THE PERSONAL PROPERTY AT THE LOCATION AWAY. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

**SPECIAL LIMITS OF LIABILITY.** THESE LIMITS DO NOT INCREASE THE COVERAGE C LIMIT OF LIABILITY. THE SPECIAL LIMIT FOR EACH FOLLOWING NUMBERED CATEGORY IS THE TOTAL LIMIT FOR EACH OCCURRENCE FOR ALL PROPERTY IN THAT NUMBERED CATEGORY.

1. $200 ON MONEY, BANK NOTES, BULLION, GOLD OTHER THAN GOLDWARE, SILVER OTHER THAN SILVERWARE, PLATINUM, COINS AND MEDALS.

2. $1,000 ON SECURITIES, ACCOUNTS, DEEDS, EVIDENCES OF DEBT, LETTERS OF CREDIT, NOTES OTHER THAN BANK NOTES, MANUSCRIPTS, PASSPORTS, TICKETS AND STAMPS.

3. $1,000 ON WATERCRAFT, INCLUDING THEIR TRAILERS, FURNISHINGS, EQUIPMENT AND OUTBOARD MOTORS.

4. $1,000 ON TRAILERS NOT USED WITH WA-TERCRAFT.

5. $1,000 FOR LOSS BY THEFT OF JEWELRY, WATCHES, FURS, PRECIOUS AND SEMIPRECIOUS STONES.

6. $2,500 FOR LOSS BY THEFT OF SILVERWARE, SILVER-PLATED WARE, GOLDWARE, AND GOLD-PLATED WARE AND PEWTERWARE. THIS INCLUDES FLATWARE, HOLLOWARE, TEA SETS, TRAYS AND TROPHIES MADE OF OR INCLUDING SILVER, GOLD OR PEWTER.

7. $2,000 FOR LOSS BY THEFT OF FIREARMS.

8. $2,500 ON PROPERTY, ON THE **RESIDENCE PREMISES** USED AT ANY TIME OR IN ANY MANNER FOR ANY **BUSINESS PURPOSE**;

9. $250 ON PROPERTY AWAY FROM THE **RESIDENCE PREMISES** USED AT ANY TIME OR IN ANY MANNER FOR ANY BUSINESS PURPOSE. HOWEVER, THIS LIMIT DOES NOT APPLY TO LOSS TO ADAPTABLE ELECTRONIC APPARATUS AS DESCRIBED IN SPECIAL LIMITS 10. AND 11. BELOW.

10. $1000 FOR LOSS TO ELECTRONIC APPARATUS, WHILE IN OR UPON A MOTOR VEHICLE OR OTHER MOTORIZED LAND CONVEYANCE, IF THE ELECTRONIC APPARATUS IS EQUIPPED TO BE OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF THE VEHICLE OR CONVEYANCE WHILE RETAINING ITS CAPABILITY OF BEING OPERATED BY OTHER SOURCES OF POWER. ELECTRONIC APPARATUS INCLUDES:

   a. ACCESSORIES AND ANTENNAS; OR

   b. TAPES, WIRES, RECORDS, DISCS OR OTHER MEDIA;

   FOR USE WITH ANY ELECTRONIC APPARATUS.

11. $1000 FOR LOSS TO ELECTRONIC APPARATUS, WHILE NOT IN OR UPON A MOTOR VEHICLE OR OTHER MOTORIZED LAND CONVEYANCE, IF THE ELECTRONIC APPARATUS:

   a. IS EQUIPPED TO BE OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF THE VEHICLE OR CONVEYANCE WHILE RETAINING ITS CAPABILITY OF BEING OPERATED BY OTHER SOURCES OF POWER;

   b. IS AWAY FROM THE **RESIDENCE PREMISES**; AND

   c. IS USED AT ANY TIME OR IN ANY MANNER FOR ANY **BUSINESS** PURPOSE.

ELECTRONIC APPARATUS INCLUDES:

   a. ACCESSORIES AND ANTENNAS; OR

   b. TAPES, WIRES, RECORDS, DISCS OR OTHER MEDIA;

   FOR USE WITH ANY ELECTRONIC APPARATUS.

**PROPERTY NOT COVERED.** WE DO NOT COVER:

1. ARTICLES SEPARATELY DESCRIBED AND SPECIFICALLY INSURED IN THIS OR ANY OTHER INSURANCE;

2. ANIMALS, BIRDS OR FISH;

3. MOTORIZED LAND VEHICLES, EXCEPT WE DO COVER:

   a. MOTORIZED LAND VEHICLES INCLUDING THEIR ACCESSORIES, ATTACHMENTS, EQUIPMENT OR PARTS, NOT SUBJECT TO MOTOR VEHICLE REGISTRATION, USED TO SERVICE AN **INSURED'S** RESIDENCE.

   b. MOTORIZED LAND VEHICLES, NOT REQUIRING MOTOR VEHICLE REGISTRATION DESIGNED FOR ASSISTING THE HANDICAPPED.

   c. EXTRA ACCESSORIES, EQUIPMENT OR PARTS DETACHED FROM A MOTORIZED LAND VEHICLE SUBJECT TO MOTOR VEHICLE REGISTRATION, OWNED OR IN THE POSSESSION OF ANY **INSURED**, PROVIDED THAT IMMEDIATELY FOLLOWING THE LOSS TO THE ITEMS CLAIMED THAT VEHICLE FOR WHICH THE ITEMS WERE INTENDED BE FULLY ASSEMBLED WITH ALL OF ITS USUAL ACCESSORIES, EQUIPMENT OR PARTS AND BE CAPABLE OF OPERATION, AS DESIGNED, PROPERLY AND LEGALLY, UPON THE PUBLIC WAYS FOR AN AMOUNT NOT EXCEEDING $500.

4. a. ANY DEVICE OR INSTRUMENT, INCLUDING ANY ACCESSORIES OR ANTENNAS, FOR THE TRANSMITTING, RECORDING, RECEIVING OR REPRODUCTION OF SOUND WHICH IS DESIGNED TO BE SOLELY OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF A MOTOR VEHICLE, OR ANY TAPE, WIRE, RECORD, DISC OR OTHER MEDIUM FOR USE WITH ANY SUCH DEVICE OR INSTRUMENT WHILE ANY OF THIS PROPERTY IS IN OR UPON A MOTOR VEHICLE;

   b. RADAR DETECTION DEVICES.

5. **AIRCRAFT** AND **AIRCRAFT** PARTS;

●                              ●

6. PROPERTY OF ROOMERS, BOARDERS AND OTHER TENANTS, EXCEPT PROPERTY OF ROOMERS AND BOARDERS RELATED TO ANY **INSURED**;

7. PROPERTY CONTAINED IN AN APARTMENT REGULARLY RENTED OR HELD FOR RENTAL TO OTHERS BY ANY **INSURED**;

8. PROPERTY RENTED OR HELD FOR RENTAL TO OTHERS AWAY FROM THE **RESIDENCE PREMISES**.

**COVERAGE D - LOSS OF USE**

The limit of liability for Coverage D is the total for all the following coverages.

1. **Additional Living Expense**. If a loss covered under this Section makes the **residence premises** uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. PAYMENT SHALL BE FOR THE SHORTEST TIME REQUIRED TO REPAIR OR REPLACE THE PREMISES OR, IF YOU PERMANENTLY RELOCATE, THE SHORTEST TIME REQUIRED FOR YOUR HOUSEHOLD TO SETTLE ELSEWHERE. This period of time is not limited by expiration of this policy.

2. **Fair Rental Value**. If a loss covered under this section makes that part of the **residence premises** rented to others or held for rental by you uninhabitable, we cover its fair rental value. PAYMENTS SHALL BE FOR THE SHORTEST TIME REQUIRED TO REPAIR OR REPLACE THE PART OF THE PREMISES RENTED OR HELD FOR RENTAL. This period of time is not limited by expiration of this policy. FAIR RENTAL VALUE SHALL NOT INCLUDE ANY EXPENSE THAT DOES NOT CONTINUE WHILE THAT PART OF THE **RESIDENCE PREMISES** RENTED OR HELD FOR RENTAL IS UNINHABITABLE.

3. **Prohibited Use**. If a civil authority prohibits you from use of the **residence premises** as a result of *direct damage to neighboring premises* by a Peril Insured Against in this policy, we cover any resulting **Additional Living expense** and **Fair Rental Value loss** FOR A PERIOD NOT EXCEEDING TWO WEEKS DURING WHICH USE IS PROHIBITED.

WE DO NOT COVER LOSS OR EXPENSE DUE TO CANCELLATION OF A LEASE OR AGREEMENT.

**ADDITIONAL COVERAGES**

1. **Debris Removal.**

   We will pay the reasonable expense incurred by you in:

a. the removal of debris of Covered property PROVIDED COVERAGE IS AFFORDED FOR THE PERIL CAUSING THE LOSS; and

b. the removal of one or more trees fallen on the **residence premises** as a result of a peril insured against UNDER SECTION I - PERILS INSURED AGAINST, COVERAGE A - DWELLING AND COVERAGE B - OTHER STRUCTURES, but not more than $500 for any one occurrence regardless of the number of fallen trees.

Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense. However the availability of this additional amount does not change the $500 maximum payable for tree debris removal under subsection b above.

2. **Reasonable Repairs**. In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost INCURRED BY YOU FOR THE NECESSARY MEASURES TAKEN SOLELY TO PROTECT AGAINST FURTHER DAMAGE. IF THE MEASURES TAKEN INVOLVE REPAIR TO OTHER DAMAGED PROPERTY, WE WILL PAY FOR THOSE MEASURES ONLY IF THAT PROPERTY IS COVERED UNDER THIS POLICY AND THE DAMAGE TO THAT PROPERTY IS CAUSED BY AN APPLICABLE PERIL INSURED AGAINST.

This Additional Coverage:

a. DOES NOT INCREASE THE LIMIT OF LIABILITY THAT APPLIES TO THE COVERED PROPERTY.

b. DOES NOT CHANGE YOUR OBLIGATIONS OR DUTIES, IF THERE IS LOSS OR DAMAGE TO COVERED PROPERTY, AS STATED IN SECTION I - CONDITIONS, CONDITION 2. YOUR DUTIES AFTER LOSS SUBSECTION d.

3. **Trees, Shrubs and Other Plants**. We cover trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following Perils Insured Against; Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or malicious mischief or Theft.

WE WILL PAY UP TO 5% OF THE LIMIT OF LIABILITY THAT APPLIES TO THE DWELLING FOR ALL TREES, SHRUBS, PLANTS OR LAWNS. NO MORE THAN $500 OF THIS LIMIT

WILL BE AVAILABLE FOR ANY ONE TREE, SHRUB OR PLANT. WE DO NOT COVER PROPERTY GROWN. FOR **BUSINESS** PURPOSES.

THIS COVERAGE IS ADDITIONAL INSURANCE.

4. **Fire Department Service Charge**. WE WILL PAY UP TO $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. No deductible applies to this coverage.

5. **Property Removed**. We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and no more than 30 days while removed. THIS COVERAGE DOES NOT CHANGE THE LIMIT OF LIABILITY APPLYING TO THE PROPERTY BEING REMOVED.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money**. We will pay up to $1,000 for:

   a. the legal obligation of any **insured** to pay because of the theft or unauthorized use of credit cards or fund transfer cards issued to or registered in any **insured's** name. WE DO NOT COVER USE BY A RESIDENT OF YOUR HOUSEHOLD, A PERSON WHO HAS BEEN ENTRUSTED WITH THE CREDIT CARD OR FUND TRANSFER CARD, OR ANY PERSON, IF ANY **INSURED** HAS NOT COMPLIED WITH ALL TERMS AND CONDITIONS UNDER WHICH THE CREDIT CARD OR FUND TRANSFER CARD IS ISSUED.

   b. loss to any **insured** caused by forgery or alteration of any check or negotiable instrument; and

   c. loss to any **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   ALL LOSS RESULTING FROM A SERIES OF ACTS COMMITTED BY ANY ONE PERSON OR IN WHICH ANY ONE PERSON IS CONCERNED OR IMPLICATED IS CONSIDERED TO BE ONE LOSS.

   WE DO NOT COVER LOSS ARISING OUT OF **BUSINESS** PURSUITS OR DISHONESTY OF ANY **INSURED**.

   No deductible applies to this coverage.

   Defense:

   a. We may make any investigation and settle any claim or suit that we decide is appropri-

ate. OUR OBLIGATION TO DEFEND ANY CLAIM OR SUIT ENDS WHEN THE AMOUNT WE PAY FOR THE LOSS EQUALS OUR LIMIT OF LIABILITY.

   b. If a claim is made or a suit is brought against any **insured** for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

   c. We have the option to defend at our expense any **insured** or any **insured's** bank against any suit for the enforcement of payment under Forgery coverage.

7. **Loss Assessment**. We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under Coverage A - Dwelling.

   This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

   THE LIMIT OF $1,000 IS THE MOST WE WILL PAY WITH RESPECT TO ANY ONE LOSS, REGARDLESS OF THE NUMBER OF ASSESSMENTS.

   Under **Section I and II Conditions**, Condition 1. **Policy Period** does not apply to this additional coverage.

8. **Collapse**. EXCEPT FOR LOSS CAUSED BY SETTLING, CRACKING, BULGING OR EXPANSION, we insure for risk of direct physical loss to covered property resulting from collapse of a building or any part of a building CAUSED ONLY BY ONE OR MORE OF THE FOLLOWING:

   a. hidden decay;

   b. hidden bird, insect or vermin damage;

   c. weight of contents, equipment, animals or people;

   d. weight of precipitation which collects on a roof;

   e. use of defective material or methods in alteration, construction, remodeling or renovation if the collapse occurs during the course of the alteration, construction, remodeling or renovation.

UNDER ITEMS a .- e., THIS COVERAGE DOES NOT INCLUDE LOSS TO AN AWNING, FENCE, PATIO, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, SWIMMING POOL, SPA, HOT TUB, UNDERGROUND PIPE, FLUE, DRAIN, DECKS, CESSPOOL, SEPTIC TANK, FOUNDATION, RETAINING WALL, BULKHEAD, PIER, WHARF OR DOCK UNLESS THE LOSS IS A DIRECT RESULT OF THE COLLAPSE OF A BUILDING.

f.  The specific Perils that follow:

   (1)  **Fire or Lightning**

   (2)  **Windstorm or Hail**

   (3)  **Explosion**

   (4)  **Riot or civil commotion**

   (5)  **Aircraft** including self-propelled missiles and spacecraft.

   (6)  **Vehicles**

   (7)  **Smoke,** meaning sudden and accidental damage from smoke.

   (8)  **Theft**

   (9)  **Falling objects**

   (10) **Weight of ice, snow or sleet**

   (11) **Accidental discharge or overflow of water or steam** from within a plumbing, drainage, heating, or air conditioning system or from within a household appliance.

   (12) **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning system, or an appliance for heating water.

   (13) **Freezing** of a plumbing, drainage, heating, air conditioning system or of a household appliance.

   (14) **Sudden and accidental damage from artificially generated electrical current.**

   These perils apply to covered building and personal property for loss insured by this additional coverage:

THIS COVERAGE DOES NOT INCREASE ANY LIMIT OF LIABILITY APPLYING TO THE DAMAGED COVERED PROPERTY.

9.  **Glass or Safety Glazing Material**

   We cover:

   a.  the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

   b.  damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

THIS COVERAGE DOES NOT INCLUDE LOSS ON THE **RESIDENCE PREMISES** IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

THIS COVERAGE DOES NOT INCREASE THE LIMIT OF LIABILITY THAT APPLIES TO THE DAMAGED PROPERTY.

10.  **Refrigerated Products Coverage**

   We will pay up to $500 for damage or loss to the contents of freezers or refrigerated units caused by a power interruption or a mechanical failure of the appliance located on the **residence premises.**

   POWER INTERRUPTION SHALL NOT INCLUDE DISCONNECTION OF THE ELECTRICAL SERVICE TO THE APPLIANCE BY UNPLUGGING IT FROM THE ELECTRICAL SOURCE OR BY SWITCHING THE APPLIANCE OR ELECTRIC SOURCE OFF.

   Mechanical failure means the breakdown or malfunction of the appliance compressor or its related components resulting in the loss of refrigeration.

   WHEN YOU LEARN OF A POWER INTERRUPTION OR MECHANICAL FAILURE OCCURRENCE THAT MAY RESULT IN LOSS OR DAMAGE TO THE CONTENTS OF A FREEZER OR REFRIGERATED UNIT, YOU MUST USE ALL REASONABLE MEANS TO PROTECT THIS PROPERTY FROM FURTHER LOSS OR DAMAGE. IF YOU DO NOT PROTECT THESE REFRIGERATED PRODUCTS FROM FURTHER DAMAGE, THIS COVERAGE WILL NOT APPLY. A $100 DEDUCTIBLE APPLIES TO THIS COVERAGE.

11.  **Excavation Coverage**

   We will pay the reasonable cost INCURRED BY YOU UP TO $1,000, for the digging or excavation of the grounds on the **residence premises** to examine or unearth underground:

   a.  Drains;

   b.  Flues;

   c.  Pipes;

   d.  Tanks; or

e. Wiring

TO PREVENT DAMAGE OR RESTORE UTILITY SERVICE ON SUCH PREMISES TO THE:

a. DWELLING;

b. OTHER STRUCTURE(S); OR

c. CONTENTS.

WE WILL PAY ONLY FOR THE DIGGING OR EXCAVATION, REASONABLY NECESSARY UNDER THIS ADDITIONAL COVERAGE. LOSS OR DAMAGE TO THE:

a. DRAINS;

b. FLUES;

c. PIPES;

d. TANKS; OR

e. WIRING

IS NOT COVERED UNDER THIS ADDITIONAL COVERAGE.

WE WILL NOT PAY FOR:

a. ANY DIGGING OR EXCAVATION BEYOND THE UTILITY SHUT-OFF POINT;

b. TREES, SHRUBS, PLANTS OR LAWNS; OR

c. ANY REFILL OR BACKFILL.

12. **Spillage or Residue Removal Coverage**

We will pay up to $5,000 for the removal of

a. substances accidently spilled on; or

b. residue covering

an interior building item insured under Coverage A - Dwelling or Coverage B Other Structures.

THIS COVERAGE INCLUDES, BUT IS NOT LIMITED TO THE CLEANING, CORRECTION, MODIFICATION, REMOVAL, REPAIR OR RENOVATION OF THE INTERIOR BUILDING ITEM(S) ALTERED, COATED, COVERED OR DAMAGED BY SUCH SPILLAGE OR RESIDUE.

THIS COVERAGE IS LIMITED TO INTERIOR BUILDING ITEMS. WE DO NOT COVER ANY ITEM LOCATED OUTSIDE THE EXTERIOR WALLS OF THE BUILDING OR BELOW THE UNDERSURFACE OF THE LOWEST BASEMENT FLOOR OR, WHERE THERE IS NO BASEMENT, BELOW THE SURFACE OF THE GROUND INSIDE THE FOUNDATION WALLS.

WE WILL NOT PAY FOR SPILLAGE OR RESIDUE REMOVAL IF THE SPILLAGE OR RESIDUE WAS CAUSED BY A PERIL EXCLUDED OR LIMITED BY THIS POLICY. HOWEVER COVERAGE EXCEPTION C. 7.e. UNDER **SECTION I - COVERAGE A. DWELLING** and **COVERAGE B - OTHER STRUCTURES** PERILS INSURED AGAINST DOES NOT APPLY TO THIS ADDITIONAL COVERAGE.

This coverage is additional coverage.

---

## SECTION I - PERILS INSURED AGAINST

COVERAGE A DWELLING AND - COVERAGE B OTHER STRUCTURES

We insure against risks of direct physical loss to property described in **COVERAGE A and B, EXCEPT**:

A. WE DO NOT COVER ANY LOSS THAT RESULTS FROM A PERIL EXCLUDED OR LIMITED BY THIS POLICY, EVEN IF A COVERED PERIL IS A CONCURRENT CAUSE OF LOSS.

B. WE DO NOT COVER ANY LOSS OR DAMAGE TO YOUR DWELLING OR OTHER STRUCTURES CAUSED DIRECTLY OR INDIRECTLY, CONTRIBUTED TO, OR AGGRAVATED BY DEFECTIVE, INADEQUATE, OR FAULTY PLANNING, CONSTRUCTION, OR MAINTENANCE OF ANY PROPERTY WHETHER ON OR OFF THE **insured location** RESULTING FROM:

**DEFECTIVE, INADEQUATE, OR FAULTY:**

1. DEVELOPMENT, SUBDIVIDING, SURVEYING, OR SITING; INCLUDING GRADING, EXCAVATION, AND SOIL COMPACTION;

2. SPECIFICATIONS, BUILDING CODES OR THEIR ENFORCEMENT OR ZONING REQUIREMENTS;

3. ALTERATION, CONSTRUCTION, REPAIRS, RENOVATION, OR REMODELING;

4. MATERIALS RECOMMENDED, SELECTED, SUPPLIED, OR USED IN ALTERATION, CONSTRUCTION, REPAIRS, RENOVATION OR REMODELING;

5. MAINTENANCE.

YOU MAY NOT CLAIM ANY OF THE SITUATIONS INCLUDED IN "B." ABOVE AS A CAUSE OF LOSS. THESE ARE NOT PERILS WE INSURE AGAINST. Ensuing perils, NOT OTHERWISE EXCLUDED OR LIMITED BY THIS POLICY are covered.

C. WE DO NOT COVER:

1. LOSSES EXCLUDED UNDER **SECTION I - EXCLUSIONS**.

2. LOSS CAUSED BY FREEZING OF A PLUMBING, DRAINAGE, HEATING, AIR

CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR OF A HOUSEHOLD APPLIANCE, OR BY DISCHARGE, LEAKAGE OR OVERFLOW FROM WITHIN THE SYSTEM OR APPLIANCE CAUSED BY FREEZING. THIS EXCLUSION APPLIES ONLY WHILE THE DWELLING IS VACANT, UNOCCUPIED OR BEING CONSTRUCTED UNLESS YOU HAVE USED REASONABLE CARE TO:

a. MAINTAIN HEAT IN THE BUILDING, OR

b. SHUT OFF THE WATER SUPPLY AND DRAIN THE SYSTEM AND APPLIANCES OF WATER.

3. LOSS CAUSED BY FREEZING, THAWING, PRESSURE OR WEIGHT OF WATER, SNOW OR ICE, WHETHER DRIVEN BY WIND OR NOT TO A:

a. FENCE, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, PATIO, SWIMMING POOL, SPA, OR HOT TUB;

b. FOUNDATION, RETAINING WALL, BULKHEAD; OR

c. PIER, DECK, WHARF OR DOCK

4. LOSS CAUSED BY THEFT IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED;

5. LOSS CAUSED BY VANDALISM AND MALICIOUS MISCHIEF OR BREAKAGE OF GLASS AND SAFETY GLAZING MATERIALS IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT;

6. CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVER A PERIOD OF TIME, WEEKS, MONTHS OR YEARS, FROM WITHIN A PLUMBING, DRAINAGE, HEATING, AIR CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE;

7. LOSS CAUSED BY:

a. WEAR AND TEAR, MARRING, DETERIORATION, OR FAILURE TO MAINTAIN;

b. INHERENT VICE, LATENT DEFECT, MECHANICAL BREAKDOWN;

c. SMOG, RUST OR OTHER CORROSION, MOLD, FUNGUS, WET OR DRY ROT;

d. SMOKE FROM AGRICULTURAL SMUDGING OR INDUSTRIAL OPERATIONS;

e. DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS UNLESS THE DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE IS ITSELF CAUSED BY A PERIL INSURED AGAINST UNDER COVERAGE C OF THIS POLICY. POLLUTANTS MEANS ANY SOLID, LIQUID, GASEOUS, OR THERMAL IRRITANT OR CONTAMINANT, INCLUDING SMOKE, VAPOR, SOOT, FUMES, ACIDS, ALKALIS, CHEMICALS AND WASTE. WASTE INCLUDES MATERIALS TO BE RECYCLED, RECONDITIONED OR RECLAIMED EXCEPT AS PROVIDED BY **SECTION I - ADDITIONAL COVERAGE 12. Spillage or Residue Removal Coverage;**

f. SETTLING, CRACKING, SHRINKING, BULGING OR EXPANSION OF DRIVEWAYS, ROADWAYS, WALKWAYS, PAVEMENTS, PATIOS, FOUNDATIONS, WALLS, FLOORS, ROOFS OR CEILINGS;

g. BIRDS, VERMIN, RODENTS OR INSECTS; OR

h. ANIMALS OWNED OR KEPT BY ANY INSURED.

If any of these cause water to suddenly escape from a plumbing, heating, air conditioning system or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. HOWEVER, "TEARING OUT" DOES NOT INCLUDE ANY DIGGING OR EXCAVATION FOR THE EXAMINATION OF UNDERGROUND DRAINS, FLUES, PIPES, TANKS OR WIRING, EXCEPT AS PROVIDED BY **SECTION I - ADDITIONAL COVERAGES - 11. Excavation Coverage.** WE DO NOT COVER LOSS TO THE SYSTEM OR APPLIANCE FROM WHICH THIS WATER ESCAPED.

8. LOSS CAUSED BY COLLAPSE OTHER THAN PROVIDED AS **ADDITIONAL COVERAGE 8.**

**UNDER ITEMS B. AND C. 2 THROUGH 7 ANY ENSUING LOSS NOT EXCLUDED IS COVERED.**

HO-3 (06-91)

**COVERAGE C PERSONAL - PROPERTY**

We insure for direct physical loss to property described in Coverage C caused only by the perils named below, unless excepted or excluded by **SECTION I EXCLUSIONS:**

1. **Fire or lightning.**

2. **Windstorm or hail.**

   THIS PERIL DOES NOT INCLUDE LOSS TO THE PROPERTY CONTAINED IN A BUILDING BY RAIN, SNOW, SLEET, SAND OR DUST UNLESS THE DIRECT FORCE OF WIND OR HAIL DAMAGES THE BUILDING CAUSING AN OPENING IN A ROOF OR WALL AND THE RAIN, SNOW, SLEET, SAND OR DUST ENTERS THROUGH THIS OPENING.

   THIS PERIL INCLUDES LOSS TO WATERCRAFT AND THEIR TRAILERS, FURNISHINGS, EQUIPMENT, AND OUTBOARD ENGINES OR MOTORS, ONLY WHILE INSIDE A FULLY ENCLOSED BUILDING.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY SMOKE FROM AGRICULTURAL SMUDGING OR INDUSTRIAL OPERATIONS.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

   THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY THEFT:

   a. COMMITTED BY ANY **INSURED,** OR ANY PERSON RENTING THE **RESIDENCE PREMISES;**

   b. IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED: OR

   c. FROM ANY PART OF A **RESIDENCE PREMISES** RENTED FOR MORE THAN 60 DAYS ANNUALLY BY AN INSURED TO OTHER THAN AN **INSURED.**

THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY THEFT THAT OCCURS AWAY FROM THE **RESIDENCE PREMISES** OF:

   a. PROPERTY WHILE AT ANY OTHER RESIDENCE OWNED, RENTED TO, OR OCCUPIED BY ANY **INSURED,** EXCEPT WHILE ANY **INSURED** IS TEMPORARILY RESIDING THERE. PROPERTY OF A STUDENT WHO IS AN **INSURED** IS COVERED WHILE AT A RESIDENCE AWAY FROM HOME IF THE STUDENT HAS BEEN THERE AT ANY TIME DURING THE 45 DAYS IMMEDIATELY BEFORE THE LOSS;

   b. WATERCRAFT, INCLUDING THEIR FURNISHINGS, EQUIPMENT AND OUTBOARD ENGINES OR MOTORS; OR

   c. TRAILERS AND CAMPERS.

10. **Falling Objects**

    THIS PERIL DOES NOT INCLUDE LOSS TO PROPERTY CONTAINED IN A BUILDING UNLESS THE ROOF OR AN OUTSIDE WALL OF THE BUILDING IS FIRST DAMAGED BY A FALLING OBJECT. DAMAGE TO THE FALLING OBJECT ITSELF IS NOT INCLUDED.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, drainage, heating, automatic fire protective sprinkler system or air conditioning system or from within a household appliance.

    THIS PERIL DOES NOT INCLUDE LOSS:

    a. TO THE SYSTEM OR APPLIANCE FROM WHICH THE WATER OR STEAM ESCAPED;

    b. CAUSED BY OR RESULTING FROM FREEZING, except AS PROVIDED IN THE PERIL FREEZING (14. **FREEZING**) BELOW; OR

    c. ON THE **RESIDENCE PREMISES** CAUSED BY ACCIDENTAL DISCHARGE OR OVERFLOW WHICH OCCURS OFF THE **RESIDENCE PREMISES.**

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

    WE DO NOT COVER LOSS CAUSED BY OR RESULTING FROM FREEZING UNDER THIS PERIL.

HO-3 (06-91)

14. Freezing of a plumbing, drainage, heating, automatic fire protective sprinkler system or air conditioning system or of a household appliance. THIS PERIL DOES NOT INCLUDE LOSS ON THE **RESIDENCE PREMISES** WHILE THE DWELLING IS UNOCCUPIED, UNLESS YOU HAVE USED REASONABLE CARE TO:

a. MAINTAIN HEAT IN THE BUILDING: OR

b. SHUT OFF THE WATER SUPPLY AND DRAIN THE SYSTEM AND APPLIANCES OF WATER.

15. **Sudden and accidental damage from artificially generated electrical current**. THIS PERIL DOES NOT INCLUDE LOSS TO A TUBE, TRANSISTOR OR SIMILAR ELECTRONIC COMPONENT.

## SECTION I - EXCLUSIONS

WE DO NOT COVER LOSS RESULTING DIRECTLY OR INDIRECTLY FROM:

1. **ORDINANCE OR LAW**, MEANING ESTABLISHING, ENFORCEMENT OF, OR THE FAILURE TO ESTABLISH OR ENFORCE ANY ORDINANCE, REGULATION OR LAW REGULATING THE CONSTRUCTION, REPAIR, DEMOLITION OR ZONING OF A BUILDING OR OTHER STRUCTURE, UNLESS SPECIFICALLY PROVIDED UNDER THIS POLICY.

2. **EARTH MOVEMENT**, MEANING ANY LOSS CAUSED BY, RESULTING FROM, CONTRIBUTED TO, OR AGGRAVATED BY EVENTS THAT INCLUDE, BUT ARE NOT LIMITED TO THE FOLLOWING:

   a. EARTHQUAKE AND EARTHQUAKE AFTERSHOCKS

   b. VOLCANO ACTIVITY INCLUDING BUT NOT LIMITED TO:

      1. VOLCANIC ERUPTION;

      2. VOLCANIC EXPLOSION;

      3. EFFUSION OF VOLCANIC MATERIAL; OR

      4. LAVA FLOW;

   c. MUDSLIDE INCLUDING, MUDFLOW, DEBRIS FLOW, LANDSLIDE, AVALANCHE, OR SEDIMENT;

   d. SINKHOLE;

   e. SUBSIDENCE;

   f. EXCAVATION COLLAPSE;

   g. EROSION;

   h. ANY EXPANSION, SHIFTING, RISING, SINKING, CONTRACTING, OR SETTLING OF THE EARTH, SOIL, OR LAND.

THIS EXCLUSION APPLIES WHETHER OR NOT THE EARTH, SOIL, OR LAND IS COMBINED OR MIXED WITH WATER OR ANY OTHER LIQUID OR MATERIAL NATURAL OR MAN-MADE.

However, loss caused directly by the specific perils:

a. fire;

b. explosion;

c. breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or;

d. theft,

following any **EARTH MOVEMENT** is covered.

3. **WATER DAMAGE**, MEANING:

   a. FLOOD, SURFACE WATER, WAVES, WAVE WASH, TIDAL WATER, OVERFLOW OF A BODY OF WATER, OR SPRAY FROM ANY OF THESE, WHETHER OR NOT A RESULT OF PRECIPITATION; OR DRIVEN BY WIND;

   b. WATER

      (1) WHICH BACKS UP THROUGH SEWERS AND DRAINS;

      (2) WHICH OVERFLOWS FROM A SUMP; OR

   c. WATER BELOW THE SURFACE OF THE GROUND, INCLUDING WATER:

      (1) WHICH EXERTS PRESSURE ON, OR SEEPS OR LEAKS THROUGH A BUILDING, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, FOUNDATION, SPA, HOT TUB, SWIMMING POOL OR OTHER STRUCTURE;

      (2) WHICH CAUSES EARTH MOVEMENT.

ALL LOSS FROM **WATER DAMAGE** IS EXCLUDED NO MATTER IF LOSS OR DAMAGE WAS CAUSED BY, OR AGGRAVATED BY ANY OTHER PERIL IN ANY SEQUENCE. However, direct loss by fire, explosion or theft resulting from **WATER DAMAGE** will be covered.

4. **POWER FAILURE**, MEANING THE FAILURE OF POWER OR OTHER UTILITY SERVICE IF THE FAILURE TAKES PLACE OFF THE **RESIDENCE PREMISES**. IF A PERIL INSURED AGAINST

HO-3 (06-91)

ENSUES ON THE **RESIDENCE PREMISES**, WE WILL PAY ONLY FOR LOSS CAUSED BY THE ENSUING PERIL.

5. **NEGLECT**, MEANING NEGLECT OF THE **IN-SURED** TO USE ALL REASONABLE MEANS TO SAVE AND PRESERVE PROPERTY AT AND AFTER THE TIME OF A LOSS, OR WHEN PROPERTY IS ENDANGERED BY A PERIL IN-SURED AGAINST.

6. **WAR**, INCLUDING UNDECLARED WAR, CIVIL WAR, INSURRECTION, REBELLION, REVOLU-TION, WARLIKE ACT BY A MILITARY FORCE OR MILITARY PERSONNEL, DESTRUCTION OR SEIZURE OR USE FOR A MILITARY PUR-POSE, AND INCLUDING ANY CONSEQUENCE OF ANY OF THESE. DISCHARGE OF A NU-

CLEAR WEAPON SHALL BE DEEMED A WAR-LIKE ACT EVEN IF ACCIDENTAL.

7. **NUCLEAR HAZARD**, TO THE EXTENT SET FORTH IN THE NUCLEAR HAZARD CLAUSE OF SECTION I - CONDITIONS.

8. **INTENTIONAL LOSS**, MEANING ANY LOSS ARISING OUT OF ANY ACT COMMITTED:

   (1) BY OR AT THE DIRECTION OF AN **IN-SURED**; and

   (2) WITH THE INTENT TO CAUSE A LOSS.

   LOSS OR DAMAGE EXCLUSIONS 1-8 APPLY ABOVE EVEN IF A COVERED PERIL IS A CONCURRENT CAUSE OF LOSS. Ensuing loss specifically accepted by the terms of this policy is covered.

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, WE SHALL NOT BE LI-ABLE:

   a. TO THE **INSURED** FOR AN AMOUNT GREATER THAN THE **INSURED'S** INTER-EST; nor

   b. FOR MORE THAN THE APPLICABLE LIMIT OF LIABILITY.

2. **Your Duties After Loss**. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. GIVE IMMEDIATE OR AS SWIFT AS POS-SIBLE NOTICE TO US OR OUR/YOUR AGENT;

   b. IN ADDITION, GIVE IMMEDIATE OR AS SWIFT AS POSSIBLE, A REPORT TO THE POLICE, IF THE LOSS IS THEFT;

   c. NOTIFY THE CREDIT CARD COMPANY OR FUND TRANSFER CARD COMPANY IN THE CASE OF LOSS UNDER **ADDITIONAL COVERAGE - 6**. CREDIT CARD, FUND TRANSFER CARD COVERAGE;

   d. (1) PROTECT THE PROPERTY FROM FURTHER DAMAGE;

   (2) MAKE REASONABLE AND NECES-SARY REPAIRS TO PROTECT THE PROPERTY; AND

   (3) KEEP AN ACCURATE RECORD OF REPAIR EXPENDITURES;

   e. PREPARE AN INVENTORY OF DAMAGED PERSONAL PROPERTY SHOWING IN DE-TAIL THE:

   (1) QUANTITY;

   (2) DESCRIPTION;

   (3) ACTUAL CASH VALUE; AND

   (4) AMOUNT OF LOSS.

   ATTACH TO THE INVENTORY ALL:

   (1) BILLS;

   (2) RECEIPTS; AND

   (3) RELATED DOCUMENTS THAT SUB-STANTIATE THE FIGURES IN THE IN-VENTORY;

   f. AS OFTEN AS WE REASONABLY RE-QUIRE:

   (1) SHOW THE DAMAGED PROPERTY;

   (2) PROVIDE US WITH RECORDS AND DOCUMENTS AND PERMIT US TO MAKE COPIES; AND

   (3) SUBMIT TO EXAMINATION UNDER OATH, WHILE NOT IN THE PRES-ENCE OF ANY OTHER **INSURED** AND SIGN THE SAME;

   g. SUBMIT TO US, WITHIN 60 DAYS AFTER WE REQUEST, YOUR SIGNED, SWORN STATEMENT OF LOSS WHICH SETS FORTH, TO THE BEST OF YOUR KNOWL-EDGE AND BELIEF:

   (1) THE TIME AND CAUSE OF LOSS;

   (2) INTEREST OF THE **INSURED** AND ALL OTHERS IN THE PROPERTY IN-VOLVED AND ALL ENCUMBRANCES ON THE PROPERTY;

   (3) OTHER INSURANCE WHICH MAY COVER THE LOSS;

(4) CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY;

(5) SPECIFICATIONS OF ANY DAMAGED BUILDING AND DETAILED ESTIMATES FOR REPAIR OF THE DAMAGE;

(6) AN INVENTORY OF DAMAGED PERSONAL PROPERTY DESCRIBED IN **2e.** ABOVE;

(7) RECEIPTS FOR ADDITIONAL LIVING EXPENSES INCURRED AND RECORDS SUPPORTING THE FAIR RENTAL VALUE LOSS;

(8) EVIDENCE OR AFFIDAVIT SUPPORTING A CLAIM UNDER THE CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE, STATING THE AMOUNT AND CAUSE OF LOSS.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. PERSONAL PROPERTY AND STRUCTURES THAT ARE NOT BUILDINGS AT ACTUAL CASH VALUE AT THE TIME OF LOSS, BUT NOT EXCEEDING THE AMOUNT NECESSARY TO REPAIR OR REPLACE;

b. CARPETING, DOMESTIC APPLIANCES, AWNINGS, OUTDOOR ANTENNAS AND OUTDOOR EQUIPMENT, WHETHER OR NOT ATTACHED TO BUILDINGS, AT ACTUAL CASH VALUE AT THE TIME OF LOSS BUT NOT EXCEEDING THE AMOUNT NECESSARY TO REPAIR OR REPLACE;

c. BUILDINGS UNDER COVERAGE A OR B AT REPLACEMENT COST WITHOUT DEDUCTION FOR DEPRECIATION, SUBJECT TO THE FOLLOWING:

(1) IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS 80% OR MORE OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE COST OF REPAIR OR REPLACEMENT, WITHOUT DEDUCTION FOR DEPRECIATION, BUT NOT EXCEEDING THE SMALLEST OF THE FOLLOWING AMOUNTS:

(a) THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING;

(b) THE REPLACEMENT COST OF THAT PART OF THE BUILDING DAMAGED FOR EQUIVALENT CONSTRUCTION AND USE ON THE SAME PREMISES; OR

(c) THE AMOUNT ACTUALLY AND NECESSARILY SPENT TO REPAIR OR REPLACE THE DAMAGED BUILDING.

(2) IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS LESS THAN 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE LARGER OF THE FOLLOWING AMOUNTS, BUT NOT EXCEEDING THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING:

(a) THE ACTUAL CASH VALUE OF THAT PART OF THE BUILDING DAMAGED; OR

(b) THAT PROPORTION OF THE COST TO REPAIR OR REPLACE, WITHOUT DEDUCTION FOR DEPRECIATION, OF THAT PART OF THE BUILDING DAMAGED, WHICH THE TOTAL AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING BEARS TO 80% OF THE REPLACEMENT COST OF THE BUILDING.

(3) IN DETERMINING THE AMOUNT OF INSURANCE REQUIRED TO EQUAL 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, YOU SHALL DISREGARD THE VALUE OF EXCAVATIONS, FOUNDATIONS, PIERS AND OTHER SUPPORTS WHICH ARE BELOW THE UNDERSURFACE OF THE LOWEST BASEMENT FLOOR OR, WHERE THERE IS NO BASEMENT, WHICH ARE BELOW THE SURFACE OF THE GROUND INSIDE THE FOUNDATION WALLS, AND UNDERGROUND FLUES, PIPES, WIRING AND DRAINS.

(4) WE WILL PAY NO MORE THAN THE ACTUAL CASH VALUE OF THE DAMAGE UNTIL ACTUAL REPAIR OR REPLACEMENT IS COMPLETE. ONCE ACTUAL REPAIR IS COMPLETE, we will settle the loss according to the provisions of c.(1) and c.(2) above. However,

IF THE COST TO REPAIR OR RE-PLACE IS LESS THAN $1,000 we will settle the loss ACCORDING TO THE PROVISIONS OF c. (1) and c. (2) above, whether or not actual repair or replacement is complete.

(5) YOU MAY DISREGARD THE RE-PLACEMENT COST LOSS SETTLE-MENT PROVISIONS AND MAKE CLAIM UNDER THIS POLICY FOR LOSS OR DAMAGE TO BUILDINGS ON AN AC-TUAL CASH VALUE BASIS AND THEN MAKE CLAIM WITHIN 180 DAYS AF-TER LOSS FOR ANY ADDITIONAL LI-ABILITY ON A REPLACEMENT COST BASIS.

4. **Loss to a Pair or Set**. In case of loss to a pair or set we may elect to:

   a. REPAIR OR REPLACE ANY PART TO RE-STORE THE PAIR OR SET TO ITS VALUE BEFORE THE LOSS; OR

   b. PAY THE DIFFERENCE BETWEEN AC-TUAL CASH VALUE OF THE PROPERTY BEFORE AND AFTER THE LOSS.

5. **Glass Replacement**. Loss for damage to glass caused by a Peril Insured Against shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impar-tial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to se-lect an umpire. The appraisers shall then set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the ap-praisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each ap-praiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance**. If a loss covered by this policy is also covered by other insurance, WE WILL PAY ONLY THE PROPORTION OF THE LOSS THAT THE LIMIT OF LIABILITY THAT APPLIES UNDER THIS POLICY BEARS TO THE TOTAL AMOUNT OF INSURANCE COVERING THE LOSS.

8. **Suit Against Us**. No action shall be brought UN-LESS THERE HAS BEEN COMPLIANCE WITH THE POLICY PROVISIONS AND THE ACTION IS STARTED WITHIN ONE YEAR AFTER THE OCCURRENCE CAUSING LOSS OR DAMAGE.

9. **Our Option**. If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

10. **Loss Payment**. We will adjust all losses with you. We will pay you UNLESS SOME OTHER PER-SON NAMED IN THE POLICY IS LEGALLY EN-TITLED TO RECEIVE PAYMENT. Loss will be payable 60 days after we receive your proof of loss and;

    a. Reach agreement with you; or

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property**. We need not accept any property abandoned by any **insured**.

12. **Mortgage Clause**. The word "mortgagee" in-cludes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as inter-ests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    a. notifies us of any change in ownership, occu-pancy or substantial change in risk of which the mortgagee is aware;

    b. pays any premium due under this policy on demand if you have neglected to pay the premium;

    c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions re-lating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days be-fore the date of cancellation or nonrenewal takes place.

If we pay the mortgagee for any loss and deny payment to you:

    a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. LOSS CAUSED BY THE NUCLEAR HAZARD SHALL NOT BE CONSIDERED LOSS CAUSED BY FIRE, EXPLOSION, OR SMOKE, WHETHER THESE PERILS ARE SPECIFICALLY NAMED IN OR OTHERWISE, INCLUDED WITHIN THE PERILS INSURED AGAINST IN SECTION I.

   c. THIS POLICY DOES NOT APPLY UNDER SECTION I TO LOSS CAUSED DIRECTLY OR INDIRECTLY BY NUCLEAR HAZARD, EXCEPT THAT DIRECT LOSS BY FIRE RE-

SULTING FROM THE NUCLEAR HAZARD IS COVERED.

15. **Inflation Protection Coverage**

   a. During the term of this policy, we will increase the limit of liability for Coverage A monthly at the rate of 1/12 of the annual residential building cost percentage change factors as determined by our cost calculation method which is based on a nationally recognized construction cost index.

   b. The limit of liability shown on the Declarations Page for Coverage A will be revised yearly at each renewal to reflect any changes in building costs during the policy period as determined in paragraph 1 above. Any adjustment in premium resulting from this change will be made on the basis of rates in use by us at the time the change is made. You have the right to refuse this change prior to the renewal date by contacting your agent or us.

16. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

---

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

a. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

### COVERAGE F-MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **residence employees**. As to others, this coverage applies only:

a. to a person on the **insured location** with the permission of any **insured**; or

b. to a person off the **insured location**, if the **bodily injury**:

   (1) arises out of a condition on the **insured location** or the ways immediately adjoining;

   (2) is caused by the activities of any **insured**;

(3) is caused by a **residence employee** in the course of the **residence employee's** employment by any **insured**; or

(4) is caused by an animal owned by or in the care of any **insured**.

---

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

   a. which is expected or intended by any **insured**;

   b. Arising out of or in connection with a **business** engaged in by any **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business**;

   **NOTE**: The furnishing of home day care services for

   (1) a fee, or

   (2) other compensation

   by the insured and the rendering of such services two or more days per week for a period of two or more hours per day constitutes one type of many different business pursuits.

   c. Arising out of the rental or holding for rental of any premises by any **insured**. This exclusion does not apply to the rental or holding for rental of an **insured location**:

   (1) on an occasional basis if used only as a residence.

   (2) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (3) in part, as an office, school, studio or private garage;

   d. arising out of the rendering or failing to render professional services;

   e. arising out of a premise:

   (1) owned by any **insured**;

   (2) rented to any **insured**; or

   (3) rented to others by any **insured**;

   that is not an **insured location**;

   f. arising out of:

   (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to any **insured**;

   (2) the entrustment by any **insured** of a motor vehicle or any other motorized land conveyance to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

   This exclusion does not apply to:

   (1) a trailer not towed by or carried on a motorized land conveyance.

   (2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

   (a) not owned by any **insured**; or

   (b) owned by any **insured** and on an **insured** location.

   (3) a motorized golf cart when used to play golf on a golf course.

   (4) a vehicle or conveyance not subject to motor vehicle registration which is:

   (a) used to service any **insured's** residence;

   (b) designed for assisting the handicapped; or

   (c) in dead storage on an **insured location**.

   g. arising out of:

   (1) the ownership, maintenance, use, loading or unloading of watercraft described below;

   (2) the entrustment by any **insured** of a watercraft described below to any person; or

   (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

   Excluded watercraft are those that are principally designed to be propelled by engine power, jet power or electric motor, or are sailing vessels, whether owned by or rented to any insured. This exclusion does not apply to watercraft:

   (1) that are not sailing vessels and are powered by:

(a) inboard or inboard-out drive engine or motor power of 50 horsepower or less not owned by any **insured**;

(b) inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to any **insured**;

(c) one or more outboard engines or motors with 25 total horsepower or less;

(d) one or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by any **insured**;

(e) outboard engines or motors of more than 25 total horsepower owned by any **insured** if:

    (i) you acquire them prior to the policy period; and

        (a) you declare them at policy inception;

        (b) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

    (ii) you acquire them during the policy period.

This coverage applies for the policy period.

(2) that are sailing vessels, with or without auxiliary power:

    (a) less than 26 feet in overall length;

    (b) 26 feet or more in overall length not owned by or rented to any insured.

(3) that are stored;

h. rising out of:

(1) the ownership, maintenance, use, loading or unloading of any **aircraft**;

(2) the entrustment by any **insured** of an **aircraft** to any person; or

(3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an **aircraft**.

Exclusions e, f, g and h do not apply to **bodily injury** to any **residence employee** arising out of and in the course of the **residence employee's** employment by any **insured**.

i. caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) undeclared war, civil war, insurrection, rebellion or revolution;

(2) warlike act by military force or military personnel; or

(3) destructive seizure or use for a military purpose. Discharge of a nuclear weapon will be deemed a war-like act even if accidental;

j. which arises out of the transmission of a communicable disease by any **insured**.

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of any Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

2. **Coverage E - Personal Liability**, does not apply to:

a. Liability:

(1) for any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) under any contract or agreement. However, this exclusion does not apply to written contracts:

    (a) that directly relate to the ownership, maintenance or use of an **insured location**; or

    (b) where the liability of others is assumed by the **insured** prior to an **occurrence**;

unless excluded in (1) above or elsewhere in this policy;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to



property damage caused by fire, smoke or explosion;

d. **bodily injury** to any person eligible to receive any benefits:

    (1) voluntarily provided; or

    (2) required to be provided;

by the **insured** under any:

    (1) workers' compensation law;

    (2) non-occupational disability law; or

    (3) occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy:

    (1) is also an insured under a nuclear energy liability policy; or

    (2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is a one issued by:

    (1) American Nuclear Insurers;

    (2) Mutual Atomic Energy Liability Underwriters;

    (3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. **bodily injury** to any person who is related by blood, marriage, or adoption to a covered person and who is a resident of the household of that person; or **bodily injury** to you.

3. **Coverage F - Medical Payments to Others,** does not apply to **bodily injury:**

a. to a **residence employee** if the **bodily injury:**

    (1) occurs off the **insured location;** and

    (2) does not arise out of or in the course of the **residence employee's** employment by an **insured;**

b. to any person eligible to receive benefits:

    (1) voluntarily provided; or

    (2) required to be provided;

under any:

    (1) workers' compensation law;

    (2) non-occupational disability law; or

    (3) occupational disease law;

c. from any:

    (1) nuclear reaction;

    (2) nuclear radiation; or

    (3) radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    (4) any consequence of any of these.

d. to any person, other than a **residence employee** of an **insured,** regularly residing on any part of the **insured location.**

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. expenses incurred by us and costs taxed against any **insured** in any suit we defend;

b. premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage E. We are not obligated to apply for or furnish any bond;

c. reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured.**

3. **Damage to Property of Others.** We will pay at replacement cost, up to $500 per **occurrence** for **property damage** to property of others caused by any **insured. We will not pay for property damage:**

a. to the extent of any amount recoverable under Section I of this policy;

b. caused intentionally by any **insured** who is 13 years of age or older;

c. to property owned by any **insured;**

d.  to property owned by or rented to a tenant of any **insured**, or a resident in your household; or

e.  arising out of:

(1)  a **business** engaged in by any **insured**;

(2)  any act or omission in connection with a premises owned, rented or controlled by any **insured**, other than the **insured location**; or

(3)  the ownership, maintenance, or use of **aircraft**, watercraft, motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**.

4.  **Loss Assessment**. We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a.  **bodily injury** or **property damage** not excluded under Section II of this policy; or

b.  liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1)  the director, officer or trustee is elected by the members of the corporation or association of property owners; and

(2)  the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a.  one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b.  A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1.  Section II - Coverage E Personal Liability Exclusion 2.a.(1);

2.  Under Section I & II - Conditions, Condition 1. Policy Period.

---

## SECTION II - CONDITIONS

1.  **Limit of Liability**. Our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds**, claims made, or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**.

Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2.  **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3.  **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You will help us by seeing that these duties are performed:

a.  give written notice to us or our agent as soon as is practical, which sets forth:

(1)  the identity of the policy and **insured**;

(2)  reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

(3)  names and addresses of any claimants and witnesses;

b.  Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

c.  at our request, help us

(1)  to make settlement;

(2) to enforce any right of contribution or indemnity against any person or organization who may be liable to any **insured**;

(3) with the conduct of suits and attend hearings and trials;

(4) to secure and give evidence and to obtain the attendance of witnesses;

d. At our option, either:

(1) Submit to us, within 60 days after we request, your signed, sworn statement of loss; or

(2) Submit to an oral examination under oath setting forth to the best of your knowledge and belief:

(a) the time and cause of loss;

(b) a description of the accident or occurrence, and;

(c) any other information we may reasonably require.

e. under this coverage - Damage to the Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if within the **insured's** control;

f. the **insured** will not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of **bodily injury.**

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.** The injured person or someone acting for the injured person will:

a. give us written proof of claim, under oath if required, as soon as practical;

b. authorize us to obtain copies of medical reports and records.

The injured person will submit to physical examination by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by any **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any **insured.** Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of any Insured.** Bankruptcy or insolvency of any **insured** shall not relieve us of any of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTION I AND SECTION II - CONDITIONS

1. **POLICY PERIOD.** THIS POLICY APPLIES ONLY TO LOSS UNDER SECTION I OR **BODILY INJURY** OR **PROPERTY DAMAGE** UNDER SECTION II, WHICH OCCURS DURING THE POLICY PERIOD.

YOU MAY CONTINUE THIS POLICY, SUBJECT TO OUR CONSENT, FOR SUCCESSIVE PERIODS BY PAYING REQUIRED PREMIUMS WHEN DUE.

2. **CONCEALMENT OR FRAUD.** THE ENTIRE POLICY WILL BE VOID IF, WHETHER BEFORE OR AFTER A LOSS, ANY **INSURED** HAS:

a. INTENTIONALLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE;

b. ENGAGED IN FRAUDULENT CONDUCT; OR

c. MADE FALSE STATEMENTS; RELATING TO THIS INSURANCE.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy WITHOUT ADDITIONAL PREMIUM CHARGE, that change will automatically apply to your insurance as of the date we implement the change in your state PROVIDED THAT THIS DATE FALLS WITHIN 60 DAYS PRIOR TO OR DURING THE POLICY PERIOD STATED IN THE DECLARATIONS. THIS LIBERALIZATION CLAUSE DOES NOT APPLY TO CHANGES IMPLEMENTED THROUGH INTRODUCTION OF A SUBSEQUENT EDITION OF OUR POLICY.

4. **Cancellation.**

a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

b. WE MAY CANCEL THIS POLICY FOR THE REASONS STATED IN THIS CONDITION BY NOTIFYING YOU IN WRITING OF THE DATE CANCELLATION TAKES EFFECT. THIS CANCELLATION NOTICE MAY BE DELIVERED TO YOU, OR MAILED TO YOU AT YOUR MAILING ADDRESS SHOWN IN THE DECLARATIONS. PROOF OF MAILING SHALL BE SUFFICIENT PROOF OF NOTICE.

   (1) WHEN YOU HAVE NOT PAID THE PREMIUM, WHETHER PAYABLE TO US OR TO OUR AGENT OR UNDER ANY FINANCE OR CREDIT PLAN, WE MAY CANCEL AT ANY TIME BY NOTIFYING YOU AT LEAST 10 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (2) WHEN THIS POLICY HAS BEEN IN EFFECT FOR LESS THAN 60 DAYS AND IS NOT A RENEWAL WITH US, WE MAY CANCEL FOR ANY REASON BY NOTIFYING YOU AT LEAST 10 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (3) WHEN THIS POLICY HAS BEEN IN EFFECT FOR 60 DAYS OR MORE, OR AT ANY TIME IF IT IS A RENEWAL WITH US, WE MAY CANCEL IF THERE HAS BEEN A MATERIAL MISREPRESENTATION OF FACT WHICH IF KNOWN TO US WOULD HAVE CAUSED US NOT TO ISSUE THE POLICY OR IF THE RISK HAS CHANGED SUBSTANTIALLY SINCE THE POLICY WAS ISSUED. THIS CAN BE DONE BY NOTIFYING YOU AT LEAST 30 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (4) WHEN THIS POLICY IS WRITTEN FOR A PERIOD LONGER THAN ONE YEAR, WE MAY CANCEL FOR ANY REASON AT ANNIVERSARY BY NOTIFYING YOU AT LEAST 30 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

c. WHEN THIS POLICY IS CANCELLED, THE PREMIUM FOR THE PERIOD FROM THE DATE OF CANCELLATION TO THE EXPIRATION DATE WILL BE REFUNDED. WHEN YOU REQUEST CANCELLATION IN THE FIRST POLICY YEAR, THE RETURN PREMIUM WILL BE BASED ON OUR SHORT-RATE TABLE. OTHERWISE, THE RETURN PREMIUM WILL BE PRO RATA.

d. IF THE RETURN PREMIUM IS NOT REFUNDED WITH THE NOTICE OF CANCELLATION OR WHEN THIS POLICY IS RETURNED TO US, WE WILL REFUND IT WITHIN A REASONABLE TIME AFTER THE DATE CANCELLATION TAKES EFFECT.

5. **NON-RENEWAL.** WE MAY ELECT NOT TO RENEW THIS POLICY. WE MAY DO SO BY DELIVERING TO YOU, OR MAILING TO YOU AT YOUR MAILING ADDRESS SHOWN IN THE DECLARATIONS WRITTEN NOTICE AT LEAST 30 DAYS BEFORE THE EXPIRATION DATE OF THIS POLICY. PROOF OF MAILING SHALL BE SUFFICIENT PROOF OF NOTICE.

6. **Assignment.** ASSIGNMENT OF THIS POLICY SHALL NOT BE VALID UNLESS WE GIVE OUR WRITTEN CONSENT.

7. **Subrogation.** Any **insured** may waive in writing before a loss all rights of recovery against any person. IF NOT WAIVED, WE MAY REQUIRE AN ASSIGNMENT OF RIGHTS OF RECOVERY FOR A LOSS TO THE EXTENT THAT PAYMENT IS MADE BY US.

   IF AN ASSIGNMENT IS SOUGHT, ANY **INSURED** SHALL SIGN AND DELIVER RELATED PAPERS AND COOPERATE WITH US IN ANY REASONABLE MANNER.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household dies;

   a. we insure the legal representative of the deceased BUT ONLY WITH RESPECT TO THE PREMISES AND PROPERTY OF THE DECEASED COVERED UNDER THE POLICY AT THE TIME OF DEATH;

   b. **INSURED** INCLUDES:

      (1) ANY MEMBER OF YOUR HOUSEHOLD WHO IS AN **INSURED** AT THE TIME OF YOUR DEATH, BUT ONLY WHILE A RESIDENT OF THE **RESIDENCE PREMISES**; AND

      (2) WITH RESPECT TO YOUR PROPERTY, THE PERSON HAVING PROPER TEMPORARY CUSTODY OF THE PROPERTY UNTIL APPOINTMENT AND QUALIFICATION OF A LEGAL REPRESENTATIVE.

HO-3 (06-91)

9. **PREMIUM.** THE PREMIUM STATED IN THE DECLARATIONS IS THE INITIAL PREMIUM FOR THIS POLICY. ON EACH RENEWAL, CONTINUATION OR ANNIVERSARY OF THE EFFECTIVE DATE OF THIS POLICY, THE PREMIUM SHALL BE COMPUTED BY US IN ACCORDANCE WITH RULES AND RATES IN EFFECT.

This policy is signed for the company which is the insurer under this policy.


James M. Michener
Secretary

Joseph Lacher
Chief Executive Officer
Personal Lines

IN WITNESS WHEREOF, the Company has executed and attested these presents.



HA-300 DC (11-02)

**THIS ENDORSEMENT CHANGES THE POICY. PLEASE READ IT CAREFULLY.**

## SPECIAL PROVISIONS - DISTRICT OF COLUMBIA

**DEFINITIONS**

The following definition is added:

**10.** **"fuel system"** means:

    a. One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

        (1) Are, or were, used to hold fuel; and

        (2) Are, or were, located on any one location;

    b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph a.;

    c. Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph a.;

    d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph a.;

    e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph a.; or

    f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph a.

A **fuel system** does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an **insured**, used for powering the motor vehicle or watercraft and not used at any time or in any manner for **business**.

**SECTION I – PROPERTY COVERAGES**

**COVERAGE C - PERSONAL PROPERTY**

**SPECIAL LIMITS OF LIABILITY**

Items 8. and 9. are deleted and replaced by the following:

**8.** $5,000 on property, on the **residence premises** used at any time or in any manner for any **business** purpose.

**9.** $1,000 on property away from the **residence premises** used at any time or in any manner for any **business** purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

**ADDITIONAL COVERAGES**

**8.** **Collapse** is deleted and replaced by the following:

**8.** **Collapse.**

    a. With respect to this Additional Coverage:

        (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

        (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

        (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

        (4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

        (1) Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this Additional Coverage;

        (2) Decay that is hidden from view, unless the presence of such decay is known to an **insured** prior to collapse;

        (3) Insect or vermin damage that is hidden from view, unless the presence of such

damage is known to an **insured** prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability applying to the damaged covered property.

The following additional coverage is added:

° **Ordinance or Law. (Forms HO-2 and HO-3 only)**

a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs

you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

## SECTION I - CONDITIONS

7. **Other Insurance,** in Form HA-6 only, is deleted and replaced by the following:

7. **Other Insurance and Service Agreement.**

a. If a loss covered by this policy is also covered by:

(1) Other insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

(2) A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

b. If, at the time of loss, there is other insurance or a service agreement in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

# SECTION II - EXCLUSIONS

1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others:** The following items are added:

   ° or any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

   (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

   (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such **bodily injury** or **property damage**, damages, loss, cost, payment or expense; or

   (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

   ° arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a **fuel system**. This exclusion applies, but is not limited to:

   (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

   (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such **bodily injury** or **property damage**, damages, loss, cost, payment or expense; or

   (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

   However, this exclusion does not apply to **bodily injury** or **property damage** arising out of fire or explosion that results from such escaped or released fuel.

# SECTION II - ADDITIONAL COVERAGES

The following additional coverage is added:

5. **Property Damage coverage for Military Personnel and Federal Government Employees:**

   If an **insured** is:

   a. A United States Government Employee; or

   b. A member of the United States Military,

   we agree to pay for **property damage** to United States government property for which such **insured** is responsible under applicable rules or regulations.

   Payment for such **property damage** will be at replacement cost. Under this endorsement "replacement cost" is defined as the amount necessary to repair or replace the damaged property with no deduction for depreciation, subject to the Limit of Liability for this Additional Coverage.

   Our Limit of Liability, per **occurrence**, under this Additional Coverage for all damages resulting from any one occurrence shall not exceed two months basic pay for the **insured**, as of the time of the **occurrence**.

   We will not pay for **property damage** to:

   a. **Aircraft**

   b. Motor Vehicles, including vehicles not designed for travel on public roads or subject to registration;

   c. Watercraft; or

   d. Weapons

   We will not pay for **property damage**:

   a. to the extent of any amount payable under Section I of this policy; or

   b. caused intentionally by an **insured** who is 13 years of age or older.

# SECTION II - CONDITIONS

1. **Limit of Liability** is deleted and replaced by the following:

1. **Limit of Liability.** Except as noted in the special limit below, our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. All **bodily injury** and **property damage**

⬤        ⬤

HA-300 DC (11-02)

resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**.

**Special Limit of Liability.** Our total liability under Coverage E is $10,000 for damages for which an insured is legally liable because of vicarious liability, whether or not statutorily imposed, for the actions of a child or minor, if such vicarious liability is not otherwise excluded. This special limit does not increase the Coverage E Limit of Liability.

Our applicable limit of liability is the same regardless of the number of **insureds**, claims made, or persons injured.

Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident shall not exceed the limit of liability for Coverage F stated in the Declarations.

## SECTION I and II - CONDITIONS

4. **Cancellation.** Paragraph **b.** is deleted and replaced by the following:

   b. We may cancel this policy for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may delivered to you, or mailed to you at your mailing address shown in the declarations. Proof of mailing shall be sufficient proof of notice.

(1) When this policy has been in effect for 30 days or less and is not a renewal with us, we may cancel for any reason by notifying you at least 30 days before the date cancellation takes effect.

(2) When this policy has been in effect for more than 30 days or at any time if it is a renewal with us, we may cancel for one or more of the following reasons by letting you know at least 30 days before cancellation takes effect:

   (a) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan;

   (b) You have made a material and willful misstatement or omission of fact to us in connection with any application to or claim against us;

   (c) Your property or other interest has been transferred to another person, unless the transfer is permissible under the terms of the policy; or

   (d) Your property or its interest or use has materially changed with respect to its insurability.

All other provisions of this policy apply.

58273 (12-99)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL REPLACEMENT COST PROTECTION
### Increased amount

Paragraph B.1. of the ADDITIONAL REPLACEMENT COST PROTECTION endorsement attached to your policy is deleted and replaced by the following:

1.   We will provide an additional amount of insurance, up to 50% of the Coverage A limit of liability; and

(This is paragraph b.(1) under the ADDITIONAL REPLACEMENT COST PROTECTION provisions in the High Value Home endorsement, or the Value Added Package endorsement, or the Value Added Package-Plus endorsement that is attached to your policy.)

All other provisions of this policy apply.



58065 (09-02)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## VALUE ADDED PACKAGE - PLUS

For an additional premium, we agree to provide the following coverages:

### DEFINITIONS

Under 6. **"Occurrence,"** the following sentence is added:

It also means offenses which result, during the policy period, in **personal injury**.

The following is added:

10. **"Personal injury"** means injury arising out of one or more of the following offenses:

   a.  False arrest, detention or imprisonment, or malicious prosecution;

   b.  Libel, slander, or defamation of character; or

   c.  Invasion of privacy, wrongful eviction, or wrongful entry.

### SECTION I - COVERAGES

### COVERAGE C - PERSONAL PROPERTY

The Coverage C limit shown on the Declarations is increased to 70% of the limit shown for **COVERAGE A - DWELLING**.

The **Special Limits of Liability** items 5., 6., and 7., are deleted and replaced by the following:

5.  $1,000 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

6.  $2,500 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

7.  $2,000 for loss by theft, misplacing or losing of firearms.

### COVERAGE D - LOSS OF USE

The Coverage D limit shown on the Declarations is increased to 30% of the limit shown for **COVERAGE A - DWELLING**.

### SECTION I - ADDITIONAL COVERAGES

8.  **Collapse.** Paragraph f. is deleted and replaced by the following:

   f.  Perils Insured Against in Coverages A and B.

The following paragraph is also added:

   This additional coverage does not apply to Coverage C - Personal Property.

12. **Spillage or Residue Removal Coverage** is deleted and replaced by the following:

12. **Spillage or Residue Removal Coverage**.

   We will pay up to $5,000 for the removal of:

   a.  Substances accidentally spilled on; or

   b.  Residue covering;

   an interior building item or contents insured under **Coverage A - Dwelling, Coverage B - Other Structures, or Coverage C - Personal Property.**

   This coverage includes, but is not limited to the cleaning, correction, modification, removal, repair or renovation of the interior building or contents item(s) altered, coated, covered or damaged by such spillage or residue.

   This coverage is limited to interior building and contents items. We do not cover any item located outside the exterior walls of the building or below the undersurface of the lowest basement floor or, where there is no basement, below the surface of the ground inside the foundation walls.

   We will not pay for spillage or residue removal if the spillage or residue was caused by a peril excluded or limited by this policy. However, coverage exception C.7.e. under COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES, PERILS INSURED AGAINST, does not apply to this Additional Coverage.

   This coverage is additional insurance.

The following **ADDITIONAL COVERAGES** are added:

* **Ordinance or Law.**

   a.  You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

      (1)  The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      (2)  The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

58065 (09-02)

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

- **Water Back Up and Sump Discharge or Overflow.**

a. **Coverage**

We insure for direct physical loss, not caused by the negligence of an "insured", to property covered under Section I caused by water, or water-borne material, which:

1. Backs up through sewers or drains; or

2. Overflows or is discharged from a:

a. Sump, sump pump; or

b. Related equipment;

even if such overflow or discharge results from mechanical breakdown. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not increase the limits of liability for Coverages **A, B, C,** or **D** stated in the Declarations.

b. **Section I - Perils Insured Against**

With respect to the coverage described in **A.** above, Paragraph:

**C.7.b.** in Forms HO-3, HA-15, HA-32 and HA-615;

is deleted and replaced by the following;

Latent defect or inherent vice;

c. **Special Deductible**

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement.

We will pay only that part of the total of all loss payable under Section I that exceeds $500. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage D - Loss of Use.

d. **Section I - Exclusions**

3. **Water Damage** is deleted and replaced by the following:

3. **Water Damage,** meaning:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water, or water-borne material, which:

(1) Backs up through sewers or drains; or

(2) Overflows or is discharged from; a sump, sump pump or related equipment;

as a direct or indirect result of flood; or

c. Water, or water-borne material, below the surface of the ground, including water which:

(1) Exerts pressure on; or

(2) Seeps or leaks through;

a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

• **Lock Replacement Coverage.**

We will pay you an amount not to exceed $250 that you incur in changing the locks on your **residence premises** when your keys have been stolen. The theft of keys must be reported to the police for this ADDITIONAL COVERAGE to apply.

No deductible applies to this ADDITIONAL COVERAGE.

If this coverage is also provided under any other endorsement on this policy, this is the only limit of liability that will apply. Because this coverage is no longer provided by any other endorsement, an appropriate premium credit will be applied to that endorsement.

**SECTION I - PERILS INSURED AGAINST**

**COVERAGE C - PERSONAL PROPERTY** is deleted and replaced by the following:

We insure against risks of direct physical loss to property described in Coverage C, except:

A. We do not cover any loss that results from a peril excluded or limited by this policy, even if a covered peril is a concurrent cause of loss.

B. We do not cover any loss or damage to your personal property caused directly or indirectly, contributed to, or aggravated by defective, inadequate, or faulty planning, construction, or maintenance of any property whether on or off the **insured location** resulting from:

Defective, Inadequate, or Faulty:

1. Development, subdividing, surveying or siting; including grading, excavation and soil compaction;

2. Specifications, building codes or their enforcement or zoning requirements;

3. Alteration, construction, repair, renovation or remodeling;

4. Materials recommended, selected, supplied or used in alteration, construction, repairs, renovation or remodeling;

5. Maintenance.

You may not claim any of the situations included in "B." above as a cause of loss. these are not perils we insure against. Ensuing perils, not otherwise excluded or limited by this policy are covered.

C. We do not cover:

1. Losses excluded under **SECTION I - EXCLUSIONS.**

2. Loss caused by freezing of a plumbing, drainage, heating, air conditioning system or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

3. Loss caused by freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

a. Fence, driveway, roadway, walkway, pavement, patio, swimming pool, spa or hot tub;

b. Foundation, retaining wall, bulkhead; or,

c. Pier, deck, wharf or dock.

4. Loss caused by theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

5. Loss caused by vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

6. Loss caused by continuous or repeated seepage or leakage of water or steam over a period of time, weeks, months or years, from within a plumbing, drainage, heating, air conditioning system or automatic fire protective sprinkler system or from within a household appliance.

7. Loss caused by:

a. Wear and tear, marring, deterioration or failure to maintain;

b. Inherent vice, latent defect, mechanical breakdown;

c. Smog, rust or other corrosion, fungus, wet or dry rot;

d. Smoke from agricultural smudging or industrial operations;

e. Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a peril insured against that would apply under Coverage C of this policy if this endorsement were not attached to the policy form, except as provided by Sec-

58065 (09-02)

tion I - Additional Coverage 12. Spillage or Residue Removal Coverage.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. waste includes materials to be recycled, reconditioned or reclaimed;

f.  Settling, cracking, shrinking, bulging or expansion of driveways, roadways, walkways, pavements, patios, foundations, walls, floors, roofs or ceilings;

g.  Birds, vermin, rodents or insects; or

h.  Animals owned or kept by any insured.

If any of these cause water to suddenly escape from a plumbing, heating or air conditioning system or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water. We do not cover loss to the system or appliance from which the water escaped.

8.  Breakage of statuary, marble, bric-a-brac, glassware, porcelains, eyeglasses and similar breakable articles; except cameras and photographic lenses, watches, bronzes and jewelry.

Breakage of this property is covered if it is the result of:

a.  Fire or lightning;

b.  Windstorm or hail;

c.  Explosion, riot or civil commotion;

d.  Collapse of a building or a part of a building;

e.  Smoke, except smoke from industrial operations or agricultural smudging;

f.  Water not excluded elsewhere;

g.  Theft or attempted theft;

h.  Vandalism or malicious mischief;

i.  Aircraft;

j.  Vehicles other than aircraft; or

k.  Sudden and accidental tearing apart, burning, bulging or cracking of a steam heating system, a hot water heating system, an automatic fire protective sprinkler system, an air conditioning system or an appliance for heating water.

9.  Loss caused by collision with other than a land vehicle.

10. Loss caused by stranding, swamping or sinking of watercraft trailers, watercraft equipment or furnishings, including outboard motors.

11. Loss caused by dampness of atmosphere or extremes of temperature unless the loss is directly caused by snow, sleet, rain or hail.

Under items 2. through 7. any ensuing loss not excluded is covered.

## SECTION I - EXCLUSIONS

3.  WATER DAMAGE. The following paragraph is added:

This exclusion does not apply to property described in Coverage C when the property is not located at a premises or location owned, controlled, occupied or rented by an insured.

## SECTION I - CONDITIONS

Under 3. Loss Settlement, paragraphs a. and b. are deleted and replaced by the following:

a.  Personal property at the cost to replace or repair at the time of the loss.

For the purposes of this coverage:

(1) Personal property includes awnings, carpeting, household appliances, outdoor antennas and outdoor equipment whether or not attached to buildings.

(2) Personal property does not include:

(a) Antiques, fine arts, paintings, statuary, and similar articles which, by their inherent nature, cannot be replaced with new articles; and

(b) Articles whose age or history contribute substantially to their value, including but not limited to memorabilia, souvenirs and collector's items.

(3) "Cost to Replace" means the cost at the time of loss of a new article of like kind and quality to the one damaged, destroyed or stolen. When an article is no longer manufactured or is not available, the "cost to replace" means the cost of a new article, similar to that damaged, destroyed or stolen, which is of comparable quality and usefulness.

(4) The limit of liability for loss on any personal property shall not exceed the smallest of the following amounts, subject to any deductible:

(a) The limit of liability of this policy applicable to Coverage C;

(b) Any special limits of liability described in the policy;

(c) The cost to replace, without deduction for depreciation, at the time of loss.

(5) When the full cost to replace or repair an article or articles is more than $2,000, we will not be liable for any loss under any part of this provision unless and until you actually repair or replace the article or articles. You may elect to disregard the Replacement Cost Loss Settlement provisions and make claim under this policy for loss or damage to personal property on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

We have the option either to repair or replace any item under this coverage, or to reimburse the cost to replace it.

b. Structures including swimming pools that are not buildings and the items listed under a. (2) (a) & (b) above at actual cash value at the time of loss, but not exceeding the amount necessary to repair or replace.

The following **CONDITION** is added:

**ADDITIONAL REPLACEMENT COST PROTECTION**

(Applies only when loss to the dwelling exceeds the Coverage A Limit of Liability shown in the Declarations)

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

a. If you have:

(1) Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

(a) The property evaluations we make; and

(b) Any increases in inflation; and

(2) Notified us, within 30 days of completion, of any improvements, alterations or additions to the dwelling which increase the replacement cost of the dwelling by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged or destroyed dwelling on the same premises.

b. If there is a loss to the dwelling that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

(1) We will provide an additional amount of insurance, up to 25% of the Coverage A limit of liability; and

(2) The Section I Condition 3. Loss Settlement paragraph c. is deleted and replaced by paragraphs c., d. and e. as follows:

c. The dwelling under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts for like construction and use on the same premises:

(1) The replacement cost of that part of the dwelling damaged or destroyed;

(2) The necessary amount actually spent to repair or replace the damaged or destroyed dwelling; or

(3) The limit of liability under this policy that applies to the dwelling, plus any additional amount provided by this endorsement.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to the dwelling on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

**SECTION II - LIABILITY COVERAGES**
**COVERAGE E - PERSONAL LIABILITY**

This section is deleted and replaced by the following:

If a claim is made or a suit is brought against any insured for damages because of **bodily injury, personal injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

a. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

b. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability.

58065 (09-02)

SECTION II - EXCLUSIONS

The following is added:

4.  **Personal injury** insurance does not apply to:

    a.  Liability assumed by the **insured** under any contract or agreement except any indemnity obligation assumed by the **insured** under a written contract directly relating to the ownership, maintenance or use of the premises;

    b.  Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an **insured**;

    c.  Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the **insured**.

    d.  Injury arising out of or in connection with a **business** engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**.

    e.  Civic or public activities performed for pay by an **insured**; or

    f.  Injury to you or an **insured** within the meaning of part **a.** or **b.** of **insured** as defined.

SECTION II - CONDITIONS

Under **1. Limit of Liability**, the following is added.

If **Personal Injury** coverage is also provided under any other endorsement on this policy, this is the only **Personal Injury** Coverage that will apply. Because this coverage is no longer provided by any other endorsement, an appropriate premium credit will be applied to that endorsement.

All other provisions of this policy apply.

Continuation
Declarations

 **TRAVELERS**

## HOMEOWNERS POLICY

**Named Insured**

EUCHARIA NKPADO & JUDE NKPADO
2433 OTIS ST NE
WASHINGTON DC 20018

**Your Agency's Name and Address**

INSURANCE COUNSELORS INC
1 GEICO BLVD
FREDERICKSBURG, VA    22412

---

Your Policy Number:    944385690 633 1
Your Account Number:   944385690

For Policy Service Call: (800) 841-3005
For Claim Service Call: 1-800-CLAIM33

**Policy Period**
FROM: 03-25-07 To: 03-25-08  12:01 A.M.
STANDARD TIME AT THE RESIDENCE PREMISES

**Location of Residence Premises**
2433 OTIS ST NE
WASHINGTON DC 20018

---

| Section I - Property Coverages | Limits of Liability | Premium |
|---|---|---|
| A - DWELLING | $ 357,000 | $ 1,191.00 |
| B - OTHER STRUCTURES | 35,700 | INCL |
| C - PERSONAL PROPERTY | 249,900 | INCL |
| D - LOSS OF USE | 107,100 | INCL |

| Section II - Liability Coverages | | |
|---|---|---|
| E - PERSONAL LIABILITY (BODILY INJURY AND PROPERTY DAMAGE) EACH OCCURRENCE | $ 100,000 | INCL |
| F - MEDICAL PAYMENTS TO OTHERS- EACH PERSON | 1,000 | INCL |

**Policy Forms and Endorsements**

| | | | | |
|---|---|---|---|---|
| HO-3 | (06-91) | Homeowners 3 Special Form | | |
| HA-300 DC | (11-02) | Special Provisions | | |
| HO-827 | (07-02) | Limited Fungi, Other Microbes or Rot Remediation | $5,000 | |
| 58065 | (09-02) | Value Added Package - Plus | | $ 324.00 |
| 58273 | (12-99) | Additional Replacement Cost Protection Increased Amount - Maximum Additional Amount of Insurance 50% | | 14.00 |

**Total Premium**                                                    $   1,529.00

---

Your Premium Reflects the Following Credits or State Surcharges

Security Credit                                                          -74.00
Loss Free Credit                                                        -64.00

Continued on next page           Insured Copy                    Page 1 of 3























































## POST OPERATIVE OUTPATIENT INSTRUCTIONS

**PROVIDENCE HOSPITAL**

```
ROOM :
NKPADO , EUCHARIA
00601492275  MR  476-686
DR. ONYELU, CHUKWUEMEKA     IDS
ADM 4/13/2007  SEX F  DOB 12/23/1972
```

PATIENT IDENTIFICATION

1. **DIET:**

    ✓ Begin with liquids and light food (jello, soups, etc.). Progress to normal diet if you are not nauseated.

    NO ALCOHOLIC BEVERAGES FOR 24 HOURS

2. 
    Prescription sent home with patient. Use as directed.  *› patient has at home*
    Prescription information sheet sent home with patient.

3. **ACTIVITIES:**

    ✓ Do not drive or operate hazardous machinery for ~~24 hours.~~
    ✓ Limit your activities ~~for 24 hours~~. Do not engage in sports, heavy work or heavy lifting until your physician gives your permission.
    _____ May resume normal activities.

4. **WOUND CARE:**  Your wound should be cared for in the following manner.

    _____ Change dressings as necessary
    ✓ Do not change dressings untill you are seen by your doctor
    ✓ Keep dressings dry.

5. **SPECIAL INSTRUCTIONS:**

    If you have any medical or surgical problems, call your physician.  If your doctor is unavailable, call the Providence Ambulatory Surgery Center [202-448-4000] or the Providence Hospital Emergency Room [202-269-7001] for advice or assistance.

    *Keep dressings on — clean & dry*
    *Take pain medication & antibiotic as*
    *ordered.*
    *Call Dr Onyewu for pain or bleeding*

6. **FOLLOW UP VISIT:**

    You should see Dr. *Onyewu* on *Monday th 16th*. Call the doctor's office for an appointment.

    *301-589-2015*

These instructions have been explained to patient and/or responsible party. A copy has been given to the patient.

NURSES Signature / Title:  *Kiki Braddson RN*

PATIENT'S SIGNATURE:  *x EUL K*

8850163  Rev. 10/03

Post Operative Outpatient Instructions - NURSING

**Section 1. Physician** ~~?~~) Discharge Instructions (complete for pa~~~~nts discharged to home / similar residence) ~~~~ preprinted patient instruction~~~~ used or there is a dictated patient summa~~~~eet for another facility, go to Section 4 an~~~~ mplete.

### FOLLOW UP APPOINTMENTS – It is important for you to keep these appointments

☑ Make appointment with: Dr. _Ilupeju_    Phone# _1 469-4422_  in _1 mth_

☐ Make appointment with: Dr. _____    Phone# _____  in _____

☐ Contact Health & Wellness at 1-800-542-5096 for follow up community services, diabetes counseling, smoking cessation

☐ Other appointments: _____

### WHEN TO CALL YOUR DOCTOR – Call your doctor immediately if you have any of the following

| New or Worsening Symptoms: | Post-Procedure Symptoms: | Other Symptoms: |
|---|---|---|
| ✓ Increased fatigue and weakness | ✓ Fever more than 101° | ☐ Increased/decreased urination |
| ✓ Shortness of breath/difficulty breathing at rest, when lying down or with activity | ✓ Increased tenderness/swelling/warmth at incision site | ☑ Dry cough / wheezing |
| ✓ Increased swelling of feet, legs, abdomen | ✓ Drainage/odor from incision site | ☐ |
| ✓ Weight gain 2-3 lbs. in one day | ✓ Bleeding from incision site | ☐ |
| ✓ Chest pain | ✓ Increased/unexpected pain | ☐ |
| | ✓ Nausea/vomiting | |

### ACTIVITY

☐ Usual    ☑ No stair climbing until _6 wks_    ☑ No heavy lifting until _6 wks_    ☐ No driving until _2 wks_

☐ No walking until _____    ☑ No sexual activity until _6 wks_    ☑ No bathing/shower until _shower only_

☐ Other: _____

### DIET

☐ Regular    ☑ Full Liquid    ☐ Clear Liquid    ☐ Soft    ☐ Diabetic ADA ___ calories/day    ☐ Other: _1 wk then regular diet_

Restrictions: ☐ Salt ___ Gms/day    ☐ Cholesterol    ☐ Liquids ___ cups/day    ☐ Alcohol    ☐ Other: _____

☐ Tube Feeding: _____    ☐ Supplement: _____

### TREATMENTS / PERSONAL CARE

Weigh and record your weight every day, if you have heart or kidney failure

Stop smoking/tobacco use. If you smoke, call for smoking cessation assistance 1-800-542-5096

Wound Care: _leave open, keep dry_

Additional Instructions: _None_

Vaccinations Received In Hospital: ☐ Pneumovax DATE: _____    ☐ Influenza DATE _____    ☐ Other _____

**Section 2: Additional Services (community resources/referrals and other arranged assistance)**

Home Health: _____    Phone# _____    Services: _____    Start Date: _____

Equip Co: _____    Phone# _____    Other: _____    Phone# _____

**Section 3: Nursing Assessment/Summary (complete for all patients)**

Reason for Discharge/Transfer: ☑ MD discharge order    ☐ Expired    ☐ AMA    ☐ Transfer

Discharge to: ☑ Home    ☐ Other Residence    Transfer to: ☐ Non-Acute Facility    ☐ Acute Facility    ☐ Transfer/Discharge Summary & chart copied*

Via: ☐ Walking    ☐ Wheelchair    ☐ Stretcher    Mode: ☐ Car/Van    ☐ Ambulance ☐ _____    By: ☐ Self    ☑ Family/Friend ☐ _____

Valuables Sent: ☐ Denture: __Upper __Lower    ☐ Glasses/Contacts    ☐ Hearing Aid: __Right __Left ☐ _____

☐ Prosthesis (type): _____    Assist Device: ☐ Cane    ☐ Walker ☐ _____    Isolation: ☐ Contact ☐ Droplet

Biopsychosocial Status: ☑ No change from last assessment    ☐ Changes from last assessment documented    ☐ Airborne

Limitations: ☐ None    ☐ Vision    ☐ Communication    ☐ Hearing    ☐ Paralysis    ☐ Amputation    ☐ Other: _____

Self Care: (I=Independent; NA=Needs Assist; T=Total Assist) _I_ Walking __Eating _I_ Dressing ___Bathing __Elimination

Misc: ☑ Continent    ☐ Incontinent    Dates: Last BM: _____    Foley Insert: _____    IV/PICC insert: _____    Other: _____

☐ Skin intact    ☐ Skin not intact: ☑ Incision    ☐ Decubitus, ☐ Abrasion  Size: _____    Location: _abdomen_

[*The transfer summary, progress notes, patient discharge medication reconciliation list & nursing and allied health records reflect the current biopsychosocial status (condition) of the patient & progress made toward goals.]

☑ Patient    ☐ Family /SO instructed/verbalizing understanding: _EU ____    Date: _3/19/07_    ☐ N/A

Nurse providing instruction: _Reann & Unclau_ Unit Phone# _301 891 5570_    Discharge Date: _3/19/07_    Time: _____

**Washington Adventist**    |    Discharge Instructions    Page 1 Of 2    |    10889152    NKPADO, EUCHARIA    ILUPEJU, OLUREMI T M

**Section 4. Discharge Medication Section**

Discharge Medicatic —— Sections A and B represent the complete list c___ medications the patient is to take upon leaving___ ospital.
☐ See Pre-Printed Discharge Instructions: Provide one copy for pauent and one for chart; Complete HOME MED...ATION list and signature below. Complete NEW MEDICATION list if new meds are not on the pre-printed instructions.
NOTE: For patients transferring to another facility Complete HOME MEDICATION list and signature below - indicating those medications to be taken at transfer facility; include new medications in transfer/discharge summary or add to NEW list below.

**A. HOME MEDICATION List:** Check box (☑) if patient to continue (Yes) or stop (No); Recommend - cross out those to stop.
B=breakfast L=lunch D=dinner BT=bedtime

Pre-admission Home Medication List Collected on: 03/16/2007

| Yes | No | Medication | Amount | When To Take | Purpose/Special Instructions |
|-----|-----|-----------|--------|--------------|------------------------------|
| ☐ | ☐ | ALBUTEROL | 2 puffs | as needed | |
| ☐ | ☐ | flovent | 2 puffs | as needed | |
| ☐ | ☐ | clartin d | | daily | |

**B. NEW MEDICATION List:** Review current hospital medications. In addition to the home medications above, list any other medications the patient is to take upon leaving the hospital. B=breakfast L=lunch D=dinner BT=bedtime

| Medication Name | Amount | B | L | D | BT | Other | Purpose/Special Instructions |
|-----------------|--------|---|---|---|----|----|------------------------------|
| Tylenol #3 ƺ | 30 | ꞙ – ꞙꞙ | | | p.o q4h | pm | pain |
| Dilaudid 2mg | 20 | ꞙ | p.o | | ꞙ6h | | pm pain |
| CIPRO 500mg | 12 | ꞙ | | | ꞙ | | prophylacti | infection |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

This is a complete list of medications the patient is to take upon discharge.
Physician (LIP) signature: _O. J. Soyinmure_    8/18/07 -

Original for Chart / Copy for Patient or Receiving Facility



**Washington Adventist**

| Discharge Instructions | 10889152 |  |
| Page 2 Of 2 | NKPADO, EUCHARIA    ILUPEJU, OLUREMI T M | |



**TRAVELERS**

PO Box 10891
Chantilly, VA 20153

14048 Park East Circle
Chantilly, VA 20151
Mail Address:
PO BOX 10891
Chantilly, VA 20153

**Angela Curtis**
*Property Claims Adjuster*
*(703) 818-6359*
*(800)681-9215 (fax)*

*Structural Engineer*

April 20, 2007

Eucharia Nkpado
2433 Otis Street NW
Washington, DC 20018

RE:    Policy Number:      944385690-633-1
      Date of Loss:         04/16/2007
      Claim Number:      UNR0812
      Company:             The Standard Fire Insurance Company (Travelers)

Dear Ms. Nkpado:

Please be advised that I have completed your estimate to repair the covered damages to your property. Please review the enclosed worksheet for further details.

The claim settles as follows:

|  |  | DWELLING | CONTENTS |
|---|---|---|---|
| 1. | The full cost of repair or replacement is: | $ 3,965.85 | $ |
| 2. | The applicable recoverable depreciation is: | $ 335.85 | $ |
| 3. | The non-recoverable depreciation is: | $ | $ |
| 4. | The actual cash value of the loss in: (Line 1 Minus Lines 2 and 3) | $ 3,630.00 | $ |
| 5. | Less Deductible: | $ 500.00 | $ |
| 6. | Actual cash value of the claim is: (Line 4 Minus Line 5) | $ 3,130.00 | $ |

You will receive a check in the amount of $3,130.00, reflecting the Actual Cash Value (ACV) payment for your structural and personal property damages, less any applicable depreciation.

To recover an amount in excess of Actual Cash Value, you must repair, rebuild or replace the damaged property within 180 days or 6 months of our Actual Cash Value payment or notify us when you plan to do so. The additional amount for the full cost of repair or replacement of damaged property must be confirmed by invoices, canceled checks, or other documentation.

The additional amount you can claim cannot be more than the smaller of:

    a.    The amount you actually and necessarily spend for repair or replacement in excess of the Actual Cash Value and no more than the Policy Limit.

Page 2

     b.    The amount of depreciation involved.

If the full cost allowed for repair or replacement of the covered damages is found to be insufficient, you must contact Travelers to discuss any supplemental claim before repairs are initiated. Please finalize any estimates for repairs to or replacement of your personal property within the next 30 days for consideration. Unapproved changes in price or scope will not be covered. The mortgagee is added to all building payments above $5,000.

Thank you for your cooperation in the adjustment of this claim. Please contact us at if you have any questions or concerns.

Sincerely,

Angela Curtis
Property Unit



# FMC Structural Design

May 10th, 2007

Mr. Jude Nkpado
2433 Otis St. NE
Washington, DC 20018

Reference:     Falling Tree Damage Assessment, Structural Survey and
Recommendations for 2433 Otis St. NE, Washington, DC 200189.

Dear Mr. Nkpado,

Pursuant to our site visit on this date May 9, 2007, and based on our visual observations for the exterior elevations and the interior floors, we offer the following:

## A) Structural Survey and General Observations:-

1. Visible cracks in interior walls and ceilings of the 1st floor and 2nd floor, cracks width ranges from 1/32"-1/8" ; majority of cracks observed at the widows and door's areas,

2. Visible damage in the front and west exterior fascia Board of the 1st floor and roof.

3. Visible damage in the 2nd floor front and west exterior fascia Board. Also the rain gutters in 1st, 2nd & roof floors were severely destroyed by the tree.

4. Entire house Roofing system had been affected by the impact of the fallen tree.

5. A visible damage in the roof boarding which had been destroyed leaving an opening approximately 3ftx3ft.

6. Attic window appeared to be displaced and not anchored to the east wall.

7. Main entrance general appearance has been affected; including damaged fascia boards, rain gutters, stoop steps, stoop side walls and handrail. Also the surrounding outdoor landscaping.

8. A sever damaged affecting the structural integrity of the east basement wall and partially the north one.

9. Continuous 1/8" wide crack in the basement slab on grade.

10. Visible void space in the front side of the basement walls due to lateral movement of the basement wall.

11. The attic rafters appeared to be in good condition; the visible damage appeared to be only in the attic roof boarding at the area mentioned in item #5.

12. The first floor joists appeared to be in good condition and satisfying the bearing requirements.

## B) Recommendations-

1. Entire east basement wall and 10' of the north basement wall starting from northeast corner of the house must be removed and rebuilt. Provide necessary re-shores for the first floor framing prior to demolition of the existing walls and during the new construction of basement wall. New walls must be constructed as per the attached design; demo of the damaged wall and construction must be in stages and sections; under construction wall section must not exceed 5 ft long.

2. We recommend immediate shoring for the 1st floor framing at the area where the east and north basement walls supporting the floor joists.

3. Exterior void space behind the north wall due to the lateral movement of the wall can be backfilled with granular material (#57 stone).

4. Crack monitors must be installed, and reading must be recorded on a weekly basis.

5. The continuous crack in slab on grade and any new cracks can be epoxy injected after the construction of the new basement wall. Any damaged part of the slab during the new construction can be poured with concrete.

6. Further roofing damage assessment must be established by certified roofing specialist.

7. All exterior damaged fascia boards, rain gutters, windows & siding must be replaced by new ones.

It should be noted that this evaluation **will be limited** to the areas mentioned above, where the structural members have been exposed.

Should you have any questions with regard to the information contained in this letter, please do not hesitate to contact us at (703)244-5115.

Respectfully,

Fadil M. Abdelfatah, P.E.
Structural Engineer



## Basement Wall – Typical Detail



PROVIDE TIE BARS OR PREFABRICATED TEE
AND EL HORIZONTAL JOINT REINFORCING (TYPICAL)

TIE BAR

TIE BAR

CORNER DETAIL

TIE BAR

TEE DETAIL

1/4"x2"x2'0" TIE BAR w/ 1-1/2" HK.
ON EACH END @ 2'0" O.C. VERT.

2'0"

1-1/2"

TIE BAR

HORIZONTAL MASONRY REINFORCEMENT DETAILS



DISTRICT OF COLUMBIA
FADIL M. ABDELFATAH
NO. 900034
5/12/06
REGISTERED
PROFESSIONAL
ENGINEER



**TRAVELERS** 

14048 Park East Circle
Chantilly, VA 20151
Mail Address:
PO BOX 10891
Chantilly, VA 20153

**Angela Curtis**
*Property Claims Adjuster*
*(703) 818-6359*
*(800) 681-9215(fax)*

PO Box 10891
Chantilly, VA  20153

May 30, 2007

Eucharia Nkpado
2433 Otis Street NW
Washington, DC  20018

RE:     Policy Number:        944385690-633-1
        Date of Loss:         4/16/2007
        Claim Number:         UNR0812
        Company:              The Standard Fire Insurance Company (Travelers)

Dear Ms. Nkpado:

I have revised your estimate to include additional damages, and it appears this estimate has been validated by your prior contractor. Please review the enclosed estimate for further details.

The claim settles as follows:

|    |                                                          | DWELLING      | CONTENTS |
|----|----------------------------------------------------------|---------------|----------|
| 1. | The full cost of repair or replacement is:               | $  9,229.08   | $        |
| 2. | The total already paid for this claim is:                | $  3,130.00   | $        |
| 3. | The recoverable depreciation is:                         | $  1,689.41   | $        |
| 4. | The non-recoverable depreciation is:                     | $             | $        |
| 5. | The actual cash value of the supplement in:              | $  4,409.67   | $        |
|    | (Line 1 Minus Lines 2 and 3)                             |               |          |
| 6. | Less Deductible:                                         | $    500.00   | $        |
| 7. | Actual cash value of the supplement is:                  | $  3,909.67   | $        |
|    | (Line 4 Minus Line 5)                                    |               |          |

You will receive a check in the amount of $3,909.67, reflecting the supplemental ACV payment for the structural damages to your home. To recover an amount in excess of Actual Cash Value, you must repair, rebuild or replace the damaged property within 180 days or 6 months of our Actual Cash Value payment or notify us when you plan to do so.  The mortgagee is added to all building payments above $5,000.00.

The additional amount for the full cost of repair or replacement of damaged property must be confirmed by invoices, canceled checks, or other documentation.

The additional amount you can claim cannot be more than the smaller of:

      a.     The amount you actually and necessarily spend for repair or replacement in excess of the Actual Cash Value and no more than the Policy Limit.





7003 1010 0003 8447 7115

INTE
Eye Street NW – #500
ington, DC 20006-2118

Corporation Service Company,
Registered Agent of Travelers Ins. Co.
1090 Vermont Avenue Nw
Suite 430
Washington DC 20005

Filed
D.C. Superior Court
08 Jul 18 P03:25
Clerk of Court

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDE NKPADO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 0004627-08 |
| | ) | |
| THE STANDARD FIRE INSURANCE | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER OF DEFENDANT THE STANDARD FIRE INSURANCE COMPANY

Defendant The Standard Fire Insurance Company ("Standard"), by its undersigned

attorneys, responds to Plaintiffs' Complaint as follows:

1.      Standard is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 1 about Plaintiffs.  The allegations in paragraph 1 about

Standard are denied.

2.      Standard is without knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 2.

3.      The allegations in paragraph 3 about the pertinent insurance policy ("the Policy")

consist of characterizations of the Policy, which speaks for itself, and no answer is required to

those allegations.  Standard is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations of paragraph 3.

4.      The allegations in paragraph 4 consist of characterizations of the Policy, which

speaks for itself, and no answer is required to those allegations.

5.    Standard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5.

6.    Standard admits that it made an initial estimate and sent Plaintiffs a check in the amount of $3,130.00.  Standard is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6, except that the allegations about the pertinent May 30, 2007 letter (evidently, Exhibit 13 to the Complaint) consist of characterizations of that letter, which speaks for itself, and no answer is required to those allegations about the letter.

7.    Standard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7.

8-12.    The allegations of paragraphs 8 through 12 are denied, except that Standard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 about rains on April 20 and 21, 2008 and the Nkpado's home.

**All allegations of the Complaint not specifically admitted above are hereby denied.**

NEGATIVE DEFENSES

1.    The Complaint fails to state any claim upon which relief may be granted.

2.    Plaintiffs do not have potentially viable claims for specific performance, damages "for hardship and inconvenience," or punitive damages.

3.    Plaintiffs' rights, if any, against Standard are subject to and limited by the terms of the Policy, including all conditions, exclusions, definitions, deductibles, and limits of liability.

4.    Standard discharged any and all obligations to any person under the Policy by properly adjusting the loss and by paying all amounts due under the Policy to Plaintiffs.

<u>AFFIRMATIVE DEFENSES</u>

1.      Plaintiffs' claims are barred by fraud.

2.      Plaintiffs' claims are barred by payment.

3.      Plaintiffs' claims are barred, in whole or in part, by their failure to mitigate their

damages.


        Standard reserves the right to amend or supplement its defenses as additional facts

become known.


                                Respectfully submitted,

                                     /s/ Steven M. Klepper
                                Steven M. Klepper, #501899
                                KRAMON & GRAHAM, P.A.
                                One South Street, Suite 2600
                                Baltimore, Maryland  21202
                                410.752.6030 (voice)
                                410.539.1269 (facsimile)

                                *Attorneys for Defendant The Standard Fire
                                Insurance Company*

Dated: July 18, 2008

CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2008, I electronically filed the foregoing

paper by CaseFileXpress, and mailed a copy of the foregoing paper by first-class mail, postage

prepaid, to the following non-CaseFileXpress participant:

Steffanie J. Lewis, Esquire
The International Business Law Firm P.C.
1915 Eye Street, NW, Suite 500
Washington, DC 20006-2118


/s/ *Steven M. Klepper*
Steven M. Klepper, #501899

Filed
D.C. Superior Court
08 Jul 18 P03:28
Clerk of Court

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDE NKPADO, et al., )<br><br>    Plaintiffs, )<br><br>v. )<br><br>THE STANDARD FIRE INSURANCE )<br>COMPANY, et al., )<br><br>    Defendants. ) | Civil Action No. 0004627-08 |

### CORPORATE DISCLOSURE STATEMENT
(The Standard Fire Insurance Company)

Defendant The Standard Fire Insurance Company ("Standard"), by its undersigned

attorneys, submits the following Disclosure Statement pursuant to Rule 7.1 of the Superior Court

Rules of Civil Procedure:

Standard is a wholly owned subsidiary of Travelers Insurance Group Holdings, Inc.,

which is a wholly owned subsidiary of Travelers Property Casualty Corp., which is a wholly

owned subsidiary of The Travelers Companies, Inc., a publicly held corporation.

Standard is not aware of any other corporations, unincorporated associations, partnerships

or other business entities, not a party to the case, which may have a financial interest in the

outcome of this case.

08416/0/00426104.WPDv1

Respectfully submitted,

_/s/ Steven M. Klepper_
Steven M. Klepper, #501899
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
410.752.6030 (voice)
410.539.1269 (facsimile)

*Attorneys for Defendant The Standard Fire Insurance Company*

Dated: July 18, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2008, I electronically filed the foregoing

paper by CaseFileXpress, and mailed a copy of the foregoing paper by first-class mail, postage

prepaid, to the following non-CaseFileXpress participant:

Steffanie J. Lewis, Esquire
The International Business Law Firm P.C.
1915 Eye Street, NW, Suite 500
Washington, DC 20006-2118

_/s/ Steven M. Klepper_
Steven M. Klepper, #501899

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDE NKPADO et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE STANDARD FIRE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
|     Defendant. | ) |

Civil Action No. 0004627-08
Judge: Alfred Irving
Next Event:   Initial Conference

### WRITTEN NOTICE PURSUANT TO 28 U.S.C. § 1446(d)
### OF FILING OF NOTICE OF REMOVAL IN FEDERAL COURT

Please take notice that, pursuant to 28 U.S.C. § 1446(d), a Notice of Removal was filed on this date in the United States District Court for the District of Columbia with respect to the above-captioned matter.  Attached hereto is a true and correct copy of the Notice of Removal for filing in the Superior Court for the District of Columbia to effectuate the removal of this action to the United States District Court for the District of Columbia and to stay all further proceedings in this Court.

08416/0/00421982.WPDv3

Respectfully submitted,

_/s/ Steven M. Klepper_
Steven M. Klepper, #501899
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
410.752.6030 (voice)
410.539.1269 (facsimile)
sklepper@kg-law.com

*Attorneys for Defendant*

Dated: July 31, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July, 2008, a copy of the

foregoing paper was filed electronically with CaseFileXpress and sent by first-class mail,

postage prepaid, to

Steffanie J. Lewis
The International Business Law Firm P.C.
1915 Eye Street NW Suite 500
Washington, D.C. 20006-2118

*Counsel for Plaintiffs*

_/s/ Steven M. Klepper_
Steven M. Klepper

08416/0/00421982.WPDv3

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDE NKPADO et al., | ) |
| | ) |
|     Plaintiffs, | )     Civil Action No. 0004627-08 |
| | )     Judge: Alfred Irving |
| v. | )     Next Event: Initial Conference |
| | ) |
| THE STANDARD FIRE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
|     Defendant. | ) |

### WRITTEN NOTICE TO ADVERSE PARTY
### OF FILING OF NOTICE OF REMOVAL IN FEDERAL COURT

    To:     Steffanie J. Lewis
            The International Business Law Firm P.C.
            1915 Eye Street NW Suite 500
            Washington, D.C. 20006-2118

    PLEASE TAKE NOTICE that a Notice of Removal of the above-captioned action

from the Superior Court of the District of Columbia, to the United States District Court

for the District of Columbia was on this day filed in the United States District Court for

the District of Columbia. A copy of such Notice of Removal is being served with this

notice.

08416/0/00421982.WPDv3

Respectfully submitted,

_/s/ Steven M. Klepper_
Steven M. Klepper, #501899
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
410.752.6030 (voice)
410.539.1269 (facsimile)
sklepper@kg-law.com

*Attorneys for Defendant*

Dated: July 31, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July, 2008, a copy of the foregoing

paper was filed electronically with CaseFileXpress and sent by first-class mail, postage

prepaid, to

Steffanie J. Lewis
The International Business Law Firm P.C.
1915 Eye Street NW Suite 500
Washington, D.C. 20006-2118

*Counsel for Plaintiffs*

_/s/ Steven M. Klepper_
Steven M. Klepper

08416/0/00421982.WPDv3

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Jude Nkpado; Eucharia Nkpado                110 cf

**DEFENDANTS**

The Standard Fire Insurance Co.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___11001___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___88888___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Steffanie J. Lewis
The International Business Law Firm P.C.
1915 Eye Street NW Suite 500
Washington, D.C. 20006-2118
(202) 296-1111

Case: 1:08-cv-01343
Assigned To : Kennedy, Henry H.
Assign. Date : 8/4/2008
Description: Contract

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ⑤ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

○ **G.  Habeas Corpus/ 2255**

☐ 530 Habeas Corpus-General
☐ 510 Motion/Vacate Sentence

○ **H.  Employment Discrimination**

☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)

*(If pro se, select this deck)*

○ **I.  FOIA/PRIVACY ACT**

☐ 895 Freedom of Information Act
☐ 890 Other Statutory Actions (if Privacy Act)

*(If pro se, select this deck)*

○ **J.  Student Loan**

☐ 152 Recovery of Defaulted Student Loans (excluding veterans)

○ **K.  Labor/ERISA (non-employment)**

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Labor Railway Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

○ **L.  Other Civil Rights (non-employment)**

☐ 441 Voting (if not Voting Rights Act)
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights
☐ 445 American w/Disabilities-Employment
☐ 446 Americans w/Disabilities-Other

◉ **M.  Contract**

☒ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholder's Suits
☐ 190 Other Contracts
☐ 195 Contract Product Liability
☐ 196 Franchise

○ **N.  Three-Judge Court**

☐ 441 Civil Rights-Voting (if Voting Rights Act)

**V. ORIGIN**

○ 1 Original Proceeding
◉ 2 Removed from State Court
○ 3 Remanded from Appellate Court
○ 4 Reinstated or Reopened
○ 5 Transferred from another district (specify)
○ 6 Multi district Litigation
○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. §1332: diversity jurisdiction over claim for breach of insurance contract

**VII. REQUESTED IN COMPLAINT**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  496,048.00    Check YES only if demanded in complaint

JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  July 31, 2008
        Aug. 4, 2008

SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_JUDE NKPADO, ET AL_
Plaintiff

v.

Civil Action No.    **08 1343**

_THE STANDARD FIRE INS. CO._
Defendant

**AUG - 4 2008**

The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge **KENNEDY, JR. J. HHK** All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for judge's initials).

Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

Finally, your attention is called to Local Rule 16.3, Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _Maureen Higgins_
Deputy Clerk

cc: _STEFFANIE J. LEWIS_

929A
Rev. 7/02